Jean A. BOURSIQUOT and Leone Boursiquot, Plaintiffs,

v.

CITIBANK F.S.B., Defendant.

No. CIV.A. 303CV1914SRU.

United States District Court,
D. Connecticut.

July 1, 2004.

---

Edward F. Kunin, Law Offices Of Edward F. Kunin, Fairfield, CT, for Plaintiffs.

Donald E. Frechette, William E. Murray, Edwards & Angell, Hartford, CT, for Defendant.

### *RULING ON MOTION TO DISMISS*

UNDERHILL, District Judge.

Jean and Leone Boursiquot ("the Boursiquots") allege violations of the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a et seq., arising out of a consumer loan transaction with the defendant, Citibank. Citibank now moves to dismiss the Boursiquots' claims based on the expiration of the statute of limitation on the TILA claims, and federal preemption of the CUTPA claims. For the following reasons the motion to dismiss is granted.

## I. FACTS

For purposes of this motion, the following facts alleged in the complaint are assumed to be true. On October 29, 1996, the Boursiquots borrowed $97,800.00 from Citibank. The note was secured by a mortgage on the Boursiquots' primary residence in Bridgeport, Connecticut. The transaction was considered a "consumer transaction" for the purposes of TILA, which requires certain disclosures prior to concluding a consumer transaction. 15 U.S.C. § 1601 et seq. A disclosure statement was created for the transaction in question and signed contemporaneously with the note and mortgage. The disclosure statement provided that, if the Boursiquots paid off any portion of the loan ahead of schedule, they would not be subject to any penalty.

In March 2003, the Boursiquots refinanced the loan on their residence with a new lender. The new note and mortgage were approved on April 10, 2003. Because the new loan was to be secured by a first mortgage on their residence in Bridgeport, the new lender required that the Boursiquots pay off the existing loan with Citibank and obtain a release of the mortgage. Subsequently, Citibank provided the Boursiquots with a payoff figure as of April 8, 2003, which calculated the total principal and interest due through May 1, 2003. The payoff statement contained language indicating that it was good through May 1, 2003 and that the total due was calculated through that date to avoid any interest shortfall. The total due was $93,622.19, broken down as follows: (1) "PRINCIPAL BALANCE AS OF 03/01/03" in the amount of $92,040.42; (2) "INTEREST FROM 03/01/03 TO 05/01/03 AT 8.750%" in the amount of $1,364.63; (3) a "PMI [private mortgage insurance] PREMIUM" of $127.14; and (4) a "FAX/STATEMENT FEE" of $90.00. The payoff statement also noted that "[a] refund will be sent to the customer's address, within 20 calendar days after payoff, for any remaining escrow funds and/or any additional payoff amount."

The entire balance of $93,622.19 was paid on April 16, 2003. At some point within the twenty days provided in the payoff statement, Citibank returned all of the excess funds.

The Boursiquots allege that Citibank committed several TILA and CUTPA violations in connection with the home loan. First, they allege that Citibank held excess interest and funds from the Boursiquots' escrow account for almost twenty days, depriving the Boursiquots of their funds, and permitting Citibank to profit by "floating" the money in violation of 15 U.S.C. § 1640 et seq. and Conn. Gen.Stat. § 42–110a et seq. Second, Citibank wrongfully kept $31.79, representing the amount due on the PMI from April 16, 2003 to April 30, 2003, and that keeping that money represents an undisclosed finance charge, in violation of 15 U.S.C. § 1640 et seq. and Conn. Gen.Stat. § 42–110a et seq. Finally, the Boursiquots contend that the $90.00 charged as a "fax/statement fee" is both unreasonable and an undisclosed finance

charge in violation of 15 U.S.C. § 1640 et seq. and Conn. Gen.Stat. § 42–110a et seq.

Citibank filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

The court should grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citation omitted); *see also Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (*quoting Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). The court must therefore accept the material facts alleged in the complaint as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *See Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 207 (S.D.N.Y.1997).

Despite the liberality of this standard, only the "well pleaded" factual allegations of the complaint will be taken as true. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Conclusory statements that fail to give notice of the basic events about which the plaintiff complains need not be credited by the court. *Haviland v. J. Aron & Co.,* 796 F.Supp. 95, 97 (S.D.N.Y.), *aff'd,* 986 F.2d 499 (2d Cir.1992), *cert. denied,* 507 U.S.

1051, 113 S.Ct. 1945, 123 L.Ed.2d 650 (1993).

## III. DISCUSSION

Citibank raises several arguments in its motion to dismiss. Only two are essential to the holding in this case: (1) the Boursiquots' TILA claims are time-barred under 15 U.S.C. § 1640(e); and (2) the Boursiquots' CUTPA claims are expressly preempted by the federal Home Owners' Loan Act ("HOLA") 12 U.S.C. § 1461 et seq., and the regulations promulgated thereunder by the Office of Thrift Supervision ("OTS"), specifically 12 C.F.R. §§ 560.2(a) and (b).

### A. The Statute of Limitations

The language of 15 U.S.C. § 1640(e) is unambiguous in setting a one-year statute of limitation for any action brought thereunder. "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). It is well settled that the "occurrence of the violation" means the date the plaintiff enters the loan agreement or, in the alternative, when the defendant performs by transmitting the loan funds to the plaintiffs. *Cardiello v. Money Store, Inc.,* 2001 WL 604007, 2001 U.S. Dist. LEXIS 7107 (S.D.N.Y. June 1, 2001). Because the loan in question closed in October 1996, any violation in connection therewith occurred more than seven years before the complaint was filed. Thus, the Boursiquots' complaint is untimely unless the statute of limitations has been equitably tolled.

The Boursiquots argue that equitable tolling applies because, at the time of the transaction, they could not have discovered that the PMI premiums would

not be prorated upon full payment.[1] This assertion fails because it is generally established that mere nondisclosures provide insufficient grounds for tolling the statute of limitations, regardless of when the plaintiffs should have discovered the nondisclosure. *In re Smith*, 737 F.2d 1549, 1552 (11th Cir.1984) ("to bring an affirmative action against a creditor for statutory damages, the debtor must bring the action 'within one year from the date of the occurrence of the violation' .... The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations."); *Bartholomew v. Northampton National Bank*, 584 F.2d 1288, 1296 (3d Cir.1978) ("the required disclosures under TILA are to be made as of the time that credit is extended, [ ] and it is as of that time that the adequacy and accuracy of the disclosures are to be measured."); *Chevalier v. Baird Savings Association*, 371 F.Supp. 1282, 1284 (E.D.Pa. 1974) ("Since Truth–in–Lending creates a 'duty to disclose,' the Plaintiffs argue, the failure to so disclose automatically tolls the statute of limitations. We cannot accept this argument, facially appealing though it may be. To apply the doctrine of fraudulent concealment in such a way would be to nullify the statute of limitations established in § 1640(e). Either that provision would be meaningless, or else plaintiffs would have us believe that a 'violation' occurs only when the requisite disclosures are eventually made, or discovered. This certainly would square with no common understanding of the word 'violation.' ").

Although the Second Circuit has yet to rule on the matter, the overwhelming authority from other jurisdictions suggests that the inability to discover a nondisclosure is not enough, by itself, to toll the statute. I see no reason to depart from the reasoning of the aforementioned line of cases. To hold otherwise would circumvent the Congress' intent and open the door to a legion of stale claims. Accordingly, the statute of limitations will not be tolled even though the Boursiquots could not have discovered the nondisclosure when they closed the loan.

Because the Boursiquots' TILA claims were first brought long after the passing of the statute of limitations and because that statute cannot be tolled on the facts of the case, the first count of the amended complaint is dismissed as time-barred.

**B. Federal Preemption**

■ Citibank moves to dismiss the Boursiquots' CUTPA claims on the ground that those claims are preempted by HOLA, 12 U.S.C. § 1461 et seq., and the regulations promulgated thereunder by the OTS. The Supremacy Clause of the United States Constitution provides the basis for federal preemption of state laws. *See Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). As the Second Circuit has noted:

> State law is preempted explicitly where Congress states an intent to occupy the field and to exclude state regulation. State law is preempted implicitly where the federal interest in the subject matter regulated is so pervasive that no room remains for state action, indicating an implicit intent to occupy the field, or

---

1. In their opposition brief, the Boursiquots argue that the statute of limitations should be tolled as a result of fraudulent concealment. Because the Boursiquots admitted at oral argument that the facts of this case do not involve any fraudulent concealment on the part of Citibank, fraudulent concealment does not provide a basis for tolling the statute of limitations in this case.

where the state regulation at issue conflicts with federal law or stands as an obstacle to the accomplishment of its objectives.

*Rondout Electric, Inc. v. NYS Department of Labor,* 335 F.3d 162 (2d Cir.2003) (*citing Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664, (1982); *Sprint Spectrum L.P. v. Mills,* 283 F.3d 404, 414–15 (2d Cir.2002)).

HOLA states that OTS may promulgate "such regulations and issue such orders as the Director may determine to be necessary for carrying out [the] act and all other laws within the Director's jurisdiction." 12 U.S.C. § 1462a(b)(2). Additionally, section 1463 provides for OTS to do so in the specific context of federal savings associations. 12 U.S.C. § 1463(a)(2).

Under the authority provided by HOLA, OTS promulgated 12 C.F.R. § 560.2(a) with the specific intention of occupying "the entire field of lending regulation for federal savings associations." [2]

(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations .... *OTS hereby occupies the entire field of lending regulation for federal savings associations* .... For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a) (emphasis added).

The language of section 560.2(a) is unequivocal in its intent to preempt all state laws affecting lending regulation for federal savings associations. Furthermore, 12 C.F.R. § 560.2(b) gives an extensive list of the type of state laws preempted by section 560.2(a) [3]. The list includes laws that affect:

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

\* \* \* \* \* \*

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

\* \* \* \* \* \*

(11) Disbursements and repayments; . . . .

*Id.*

■ The Boursiquots' CUTPA claims fall squarely within the fields of state law

---

**2.** Citibank is a federal savings association.

**3.** A working example of the types of laws OTS intended to preempt comes from CUTPA's California analog, the Unfair Competition Act ("UCA"), Cal Bus. & Prof.Code §§ 17200 et seq. In an opinion letter OTS stated that

UCA is preempted by HOLA where it attempts to regulate loan-related fees *including statement fees and facsimile charges.* OTS Opinion Letter P–99–3, Mar. 10, 1999, at 16 (emphasis added).

set forth above. Regardless, the Boursiquots argue that their CUTPA claims are excepted under 12 C.F.R. § 560.2(c), because CUTPA falls under the heading of "commercial law." Although Section 560.2(c) does create an exception for some state commercial laws, it goes on to provide that state commercial laws "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations ...." 12 C.F.R. § 560.2(c). CUTPA's effects are not merely incidental, they have a direct bearing the lending operations of federal savings associations.

Because the Boursiquots' CUTPA claims are preempted by federal law, the second count of the amended complaint is dismissed.

## IV. CONCLUSION

For the aforementioned reasons, Citibank's Motion to Dismiss (doc. # 13) is GRANTED. The clerk shall close this file.

It is so ordered.