193 P.3d 155 (2008)
144 Wash.App. 900
Anne and Chris McCURRY, on behalf of themselves and others similarly situated, Appellants,
v.
CHEVY CHASE BANK, F.S.B., Respondent.
No. 60075-3-I.
Court of Appeals of Washington, Division 1.
June 2, 2008.
*156 Roblin John Williamson, Williamson & Williams, Bainbridge Island, WA, Guy William Beckett, Beckett Law Offices PLLC, Seattle, WA, for Appellants.
Timothy J. Filer, Jeffrey S. Miller, Neil Armstrong Dial, Foster Pepper PLLC, Seattle, WA, for Respondent.
DWYER, J.
¶1 In this case we are asked to decide whether federal regulations preempt certain state law claims made against a home loan lender. Anne and Chris McCurry appeal the trial court's dismissal of their putative nationwide class action against federally chartered savings bank Chevy Chase Bank, F.S.B. Chevy Chase charged the McCurrys $20 in "Accumulated Fax Fees" and a $2 "Notary Fee" as a result of the McCurrys' payoff of a home loan made to them by Chevy Chase. In a "Payoff Statement" issued to the McCurrys, Chevy Chase stated that the McCurrys, "[p]ayoffs cannot be processed unless the `Total Amount Due Chevy Chase' [including the fax and notary fees] is remitted."
¶2 The McCurrys' complaint alleges that these fees breached Chevy Chase's contract *157 with the McCurrys (i.e., the deed of trust securing their loan), unjustly enriched Chevy Chase, and violated Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court ruled that these allegations fail to state a claim upon which relief could be granted because regulations issued by the federal Office of Thrift Supervision (OTS), pursuant to its authority under the federal Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461-70, occupy "the entire field of lending regulation for federal savings associations," and expressly preempt state statutes and judicial decisions that purport to regulate "loan-related fees." 12 C.F.R. § 560.2. Because we agree with the trial court that the fees about which the McCurrys complain are not subject to additional regulation arising out of Washington state court adjudication of state statutory or common law claims, we affirm.

CR 12(b)(6) Standard
¶3 A preliminary issue is whether, in reviewing the trial court's dismissal of the McCurrys' complaint, we should adopt the standard for dismissal now utilized by the federal courts in resolving motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6). See Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Chevy Chase urges us to apply the Twombly standard, noting that it requires that allegations be "plausible" in order to survive a motion for dismissal. Twombly, 127 S.Ct. at 1965-66.
¶4 We interpret "court rules as if they were statutes." Farmers Ins. Exch. v. Dietz, 121 Wash.App. 97, 100, 87 P.3d 769 (2004). Thus, once the state Supreme Court decides an issue with respect to a state court rule, that interpretation is binding on all lower courts until it is overruled by the state Supreme Court. State v. Gore, 101 Wash.2d 481, 487, 681 P.2d 227 (1984). Accordingly, we are without authority to adopt a standard for claim dismissal different from the one previously announced by our Supreme Court.
¶5 This being the case, "a challenge to the legal sufficiency of the plaintiff's allegations must be denied unless no state of facts which plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief on the claim." Halvorson v. Dahl, 89 Wash.2d 673, 674, 574 P.2d 1190 (1978).[1]

Preemption
¶6 The central issue before us is whether the express preemption regulations issued by OTS bar the state law claims asserted by the McCurrys. The McCurrys contend that their claims against Chevy Chase are not preempted by 12 C.F.R. § 560.2 because, first, the fax and notary fees charged by Chevy Chase are not "loan-related fees," and, second, their claims pertaining to these fees, if found to be viable under Washington law, would have "only incidentally affect[ed] the lending operations" of federally chartered savings banks such as Chevy Chase. See 12 C.F.R. § 560.2(b)(5) and (c). Chevy Chase responds that the fax fees and notary fees charged in its payoff statement are precisely the type of "loan-related fees" described in 12 C.F.R. § 560.2(b)(5) and are, accordingly, immune from state regulation either directly by statute or indirectly by judicial application of state law. Chevy Chase is correct.
¶7 "The Supremacy Clause of the United States Constitution provides the basis for federal preemption of state laws." Boursiquot v. Citibank F.S.B., 323 F.Supp.2d 350, 354 (D.Conn.2004) (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Enacted in 1933 to provide emergency relief from a crisis of home loan defaults during the Great Depression, HOLA "empowered what is now the Office of Thrift Supervision in the Treasury Department to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." In re Ocwen Loan Servicing, LLC, Mortg. Servicing Litig., 491 F.3d 638, 641-42 (7th Cir.2007) (citing de la Cuesta, 458 U.S. at 161-62, 102 S.Ct. 3014). Based on this authority conferred *158 by Congress, "OTS promulgated 12 C.F.R. § 560.2(a) with the specific intention of occupying `the entire field of lending regulation for federal savings associations.'" Boursiquot, 323 F.Supp.2d at 355 (quoting 12 C.F.R. § 560.2(a)).[2]
¶8 The OTS regulations are explicit that federal law leaves no room for direct state regulation of the loan-related activities of federally chartered savings associations, including regulation through judicial decisions of state law claims:
(a) Occupation of field.... OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.
12 C.F.R. § 560.2(a).
¶9 The OTS preemption regulations then provide a non-exclusive, illustrative list of the types of state regulatory behaviors, categorized by the object of regulation, that are expressly barred by the application of federal law. In addition to listing nearly every conceivable state licensing or other requirement that might be imposed on the savings associations themselves, as well as state regulations purporting to mediate the terms of credit as between the lender and borrower, the OTS regulations explicitly list as preempted those state regulatory actions that attempt to define the lawfulness of various fees imposed by savings associations on their customers:
(b) Illustrative examples. ... [T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
. . . .
(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees.
12 C.F.R. § 560.2(b).
¶10 Finally, the OTS regulations provide that generally applicable state laws are not preempted, provided that they do not directly affect the lending operations of federally chartered savings associations:
(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
(1) Contract and commercial law;
(2) Real property law;
(3) Homestead laws specified in 12 U.S.C. 1462a(f);
(4) Tort law;
(5) Criminal law; and
(6) Any other law that OTS, upon review, finds:
(i) Furthers a vital state interest; and
(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.
12 C.F.R. § 560.2(c). "Thus, § 560.2 would preempt any state statute or judicial decision purporting to regulate loan-related fees or the processing and servicing of mortgages, or any state statute or judicial decision that has more than an incidental effect on the lending operations of federal savings associations." Haehl v. Wash. Mut. Bank, F.A., 277 F.Supp.2d 933, 940 (S.D.Ind.2003).
¶11 Intrinsic to this preemption framework, then, is that federally chartered savings associations are subject to the majority *159 of generally applicable state laws, except when those laws purport to affect their lending operations, in which case the state laws are superseded. Accordingly, the key determination in any case where state law claims challenge the legality of actions taken by federal savings associations against their customers is "which claims fall on the regulatory side of the ledger and which, for want of a better term, fall on the common law side." Ocwen, 491 F.3d at 644.
¶12 When OTS promulgated the final version of 12 C.F.R. § 560.2, it explained how to make this decision. It first clarified that the purpose of the final version of section 560.2 is to "provide an interpretive standard for identifying state laws that may be designed to look like traditional property, contract, tort, or commercial laws, but in reality are aimed at other objectives, such as regulating the relationship between lenders and borrowers." 61 Fed.Reg. 50,951, 50,966 (Sept. 30, 1996). OTS's rule-writers made clear that the absence of a particular type of state law in 12 C.F.R. § 560.2(b) "should not be deemed to constitute evidence of an intent to permit state laws of that type to apply to federal thrifts." 61 Fed.Reg. at 50,966. Rather, courts must presume that state laws that regulate the relationship between borrowers and lenders are uniformly preempted:
When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed.Reg. at 50,966-67 (emphasis added).
¶13 Given this presumption, it is hardly surprising that almost all published court decisions examining fax and other fees charged by a lender in a payoff statement hold that state law claims challenging such fees are preempted.[3] For example, in Boursiquot, the federal district court for the district of Connecticut found preempted claims alleging the illegality of $90 in "FAX/STATEMENT" fees included in a payoff statement, ruling that the claims "fall squarely within the fields of state law" expressly listed in 12 C.F.R. 560.2(b). Boursiquot, 323 F.Supp.2d at 352, 355. The Boursiquot court relied upon OTS's own informal interpretation of its preemption regulations to reach its conclusion that the fax and other charges associated with the plaintiffs' payoff statement were "loan-related fees" within the meaning of 12 C.F.R. 560.2(b), and that claims premised upon their illegality were barred by federal law:
A working example of the types of laws OTS intended to preempt comes from [the Connecticut consumer protection law's] analog, the Unfair Competition Act ("UCA"), Cal. Bus. & Prof.Code §§ 17200 et seq. In an opinion letter OTS stated that UCA is preempted by HOLA where it attempts to regulate loan-related fees including statement fees and facsimile charges.

Boursiquot, 323 F.Supp.2d at 355 n. 3 (citing OTS Opinion Letter P-99-3, Mar. 10, 1999, at 16 (emphasis added in Boursiquot)).[4]
¶14 Similarly, in Lopez v. World Savings & Loan Association, 105 Cal.App.4th 729, *160 130 Cal.Rptr.2d 42 (2003), the California Court of Appeal rejected precisely the same argument that the McCurrys are making in this casethat "a fee for providing a payoff demand statement is not a loan-related fee," and thus is not preempted. Lopez, 105 Cal. App.4th at 738-39, 130 Cal.Rptr.2d 42. The court pointed out, reasonably, that "[p]roviding a payoff demand statement is a service provided by the association as lender in connection with its outstanding loan, and is a necessary step in paying off the loan." Lopez, 105 Cal.App.4th at 739, 130 Cal.Rptr.2d 42. Accordingly, the court concluded that fees associated with the plaintiffs' payoff statement were "loan-related fees," and that the plaintiffs' claims were barred by federal law. Lopez, 105 Cal.App.4th at 737-38, 130 Cal.Rptr.2d 42. The contrary contention, advanced by both the McCurrys and the plaintiffs in Lopezthat fees associated with something fundamentally necessary to the discharge of the loan (the payoff statement) are somehow not "loan-related"fairly strains the English language.[5]
¶15 Most other cases directly on point are in accord. See, e.g., Haehl, 277 F.Supp.2d at 941 (reconveyance fee "falls within the broad category of `loan-related fees'") (citing Chaires v. Chevy Chase Bank, F.S.B., 131 Md.App. 64, 748 A.2d 34 (2000)); Moskowitz v. Wash. Mut. Bank, FA, 329 Ill.App.3d 144, 148, 263 Ill.Dec. 502, 768 N.E.2d 262 (2002) (fax and other fees in payoff statement are "loan-related fees" within the meaning of 12 C.F.R. § 560.2(b)(5)).
¶16 The Chaires opinion additionally, and correctly, rejects one of the McCurrys' subsidiary argumentsthat a choice of law provision in a deed of trust can, by selecting state law, displace a superseding federal regulation. Chaires, 131 Md.App. at 85, 748 A.2d 34 ("appellees did not, as they could not, elect state law over federal law"). This result is hardly surprising; insofar as "OTS... occupies the entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a), there is no applicable state law that the McCurrys may elect.
¶17 The decisions that the McCurrys rely upon, in contrast, either address different types of fees, and so are irrelevant, are unpersuasive, or have been overturned. First, the vast majority of the McCurrys' authority must be distinguished as dealing with different types of fees or claims. See McKell v. Wash. Mut., Inc., 142 Cal.App.4th 1457, 1465, 49 Cal.Rptr.3d 227 (2006) (pass-through fees, which dissent nonetheless convincingly argues are "loan-related"); Gibson v. World Sav. & Loan Ass'n, 103 Cal.App.4th 1291, 1294, 128 Cal.Rptr.2d 19 (2002) (unlawful insurance charges); Fenning v. Glenfed, Inc., 40 Cal.App.4th 1285, 1289-90, 47 Cal.Rptr.2d 715 (1995) (fraudulent inducement to purchase risky investments; no lending at issue); Pinchot v. Charter One Bank, F.S.B., 99 Ohio St.3d 390, 398, 792 N.E.2d 1105 (2003) (mortgage satisfaction statute not preempted because not regulating lending activity).
¶18 Others of the McCurrys' cited cases are simply unpersuasive.[6] For instance, in Konynenbelt v. Flagstar Bank F.S.B., 242 Mich.App. 21, 29-30, 617 N.W.2d 706 (2000), the Michigan Court of Appeals reasoned that charges imposed upon reconveyance for the *161 recordation of mortgage could form the basis of valid state law claims simply because the precursor regulation to 12 C.F.R. § 560.2(b), 12 C.F.R. § 545.2, did not explicitly list the type of charges at issue. However, 12 C.F.R. § 560.2 expressly states that the examples listed in subsection (b) are merely illustrative and "without limitation," going so far as to repeat "without limitation" again in the subsection listing those fees regulated solely by OTS. 12 C.F.R. § 560.2(b)(5). Further, the Konynenbelt court expressly based its holding upon the rationale advanced in Siegel v. American Savings & Loan Association, 210 Cal.App.3d 953, 258 Cal.Rptr. 746 (1989), which was (correctly) recognized as abrogated by 12 C.F.R. § 560.2 in Lopez, 105 Cal.App.4th at 740, 130 Cal.Rptr.2d 42. See Konynenbelt, 242 Mich.App. at 29, 617 N.W.2d 706.
¶ 19 Similarly, Leto v. World Sav. & Loan Ass'n, No. CIV.A.SA-98-CA0261OG, 1998 WL 1784221 (W.D.Tex.1998), another opinion cited by the McCurrys, is lacking in persuasive power. Leto is simply an unpublished report and recommendation by a federal magistrate judge, in which the court finds no basis for federal removal jurisdiction because some state law claims might preclude total preemption. Leto, 1998 WL 1784221, at *4.
¶ 20 In sum, every currently valid published judicial opinion  with the exception of Konynenbelt  and OTS itself conclude that fees of the type at issue in this case are "loan-related fees" within the plain meaning of 12 C.F.R.  560.2(b)(5). As such, "the analysis [ends] there," and any claim alleging the illegality of such fees "is preempted." 61 Fed.Reg. at 50,966. Put more bluntly, our conclusion that the fax fees and notary fees challenged by the McCurrys are "loan-related fees" means "that is the end of the case." Ocwen, 491 F.3d at 643.
¶ 21 Moreover, even were we to conclude that 12 C.F.R. § 560.2(b)(5) did not conclusively resolve the preemption issue, we would nonetheless conclude, consistent with the rationale stated in Haehl, that a judicial decision imposing restrictions on the type of fees at issue in this case would more than "incidentally affect" the lending operations of federally chartered savings banks and thus nonetheless be preempted pursuant to 12 C.F.R. § 520.2(c):
A decision in plaintiffs' favor would have the same effect as a direct regulation of the fees: to determine the circumstances under which [the defendant] may charge its customers a reconveyance fee. ... Thus, applying [state tort] law in this case would more than "incidentally affect" lending operations by imposing substantive requirements on lending operations.
Haehl, 277 F.Supp.2d at 942. This rationale applies with equal force to the McCurrys' state contract and CPA claims.
¶ 22 Contrary to the McCurrys' contention, there is no basis for distinguishing between the fax fees and notary fees that the McCurrys claim to be unlawful. Both are "loan-related fees" required for the reconveyance and recordation of the deed of trust that was held by Chevy Chase as security for the McCurrys' home loan. This being so, the fees at issue here are directly regulated by OTS, and state law may not directly or indirectly impose additional requirements on Chevy Chase with respect to them.
¶ 23 Affirmed.
WE CONCUR: AGID and LEACH, JJ.
NOTES
[1] The McCurrys contend that a conceivable fact, requiring reversal, is that Chevy Chase may not have actually had anything notarized. But the McCurrys did not include such an allegation in their complaint, and so it provides no basis to reverse the complaint's dismissal.
[2] "`For purposes of determining Congressional intent, federal regulations enacted under authority granted by Congress are entitled to the same preemptive effect as a federal statute.'" Lopez v. World Sav. & Loan Ass'n, 105 Cal.App.4th 729, 736, 130 Cal.Rptr.2d 42 (2003) (quoting Wis. League of Fin. Insts. v. Galecki, 707 F.Supp. 401, 404 (W.D.Wis.1989)).
[3] Numerous courts, both state and federal, have examined whether a variety of state law claims (based on a variety of fees) are preempted by OTS's regulations. Because no Washington judicial opinion addresses OTS preemption, the value of these decisions, which conflict in greater or lesser degrees, is limited to their power to persuade. "[W]e are properly guided by the principles of law announced in the most well-reasoned of the decisions we have reviewed. We are not, however, bound to follow a holding of a lower federal court merely because it was announced as such." S.S. v. Alexander, 143 Wash.App. 75, 177 P.3d 724, 733 (2008).
[4] The McCurrys contend that OTS opinion letters are not entitled to judicial deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The McCurrys are correct. Rather, "interpretations contained in formats such as opinion letters are `entitled to respect' under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the `power to persuade.'" Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). But it hardly follows from this principle that OTS's view of its own regulation is irrelevant.
[5] The McCurrys have put forward the theory that only fees associated with the origination and maintenance of loansrather than their dischargeare "loan-related fees" within the meaning of 12 C.F.R. § 560.2(b)(5). This theory, while plausible-seeming, suffers from the fact that it is utterly unsupported by legal authority.
[6] The McCurrys rely heavily on our decision in Dwyer v. J.I. Kislak Mortgage Corp., 103 Wash. App. 542, 13 P.3d 240 (2000), as authority that their CPA claim must be remanded for consideration on the merits. The McCurrys are correct that, in Dwyer, we found the type of fees at issue in this case to be sufficiently deceptive to violate the CPA, holding that they had the "capacity to deceive reasonable consumers into believing that they must pay the fees" before release of the instrument securing a home loan. Dwyer, 103 Wash.App. at 547, 13 P.3d 240. But the defendant in Dwyer apparently never raised the issue of federal preemption with respect to the plaintiffs' claims. Nowhere does the opinion mention federal preemption, or perform any analysis of whether the claims at issue might be barred by superseding federal regulations. As such, Dwyer does not resolve the issues properly raised by Chevy Chase in this case.