[No. 62152-1-I.   Division One.   June 8, 2009.]

JEFFREY T. PARSONS, ET AL., *Appellants*, v. COMCAST OF CALIFORNIA/COLORADO/WASHINGTON I, INC., ET AL., *Respondents*.

*Kirk R. Wines* and *John L. O'Brien,* for appellants.

*Randal L. Gainer* and *Charles S. Wright* (of *Davis Wright Tremaine, LLP*), for respondents.

¶1 GROSSE, J. — Subject to a few narrow exceptions, the Cable Act[1] expressly preempts state or local action that amounts to rate regulation of basic cable television services; such is the purview of the Federal Communications Commission (FCC) and local franchising authorities alone. Individual subscribers or groups may challenge the rates charged to them by a cable service provider only before the FCC or before the local franchising authority. Because the plaintiffs here sought relief that necessarily required rate regulation, conduct explicitly proscribed by the Cable Act, summary dismissal of plaintiffs' state law claims under CR 12(b)(6) was proper. We affirm.

## FACTS

¶2 The plaintiffs (collectively Parsons) are Comcast cable television subscribers living in King County's Greenwood Point and South Cove (annexation area). Following a popular vote, the city of Issaquah annexed those areas effective March 2, 2006. Prior to annexation, the city, a local franchising authority under the Cable Act,[2] and Comcast entered into a franchise agreement wherein Comcast agreed to charge the same negotiated rates to city of Issaquah residents for basic cable television services. At one point, Comcast[3] sent a letter to its subscribers living in the annexation area announcing an upcoming rate reduction

---

[1] Cable Communications Policy Act of 1984; Cable Television Consumer Protection and Competition Act of 1992 (collectively Cable Act), 47 U.S.C. §§ 521-559, 601-611.

[2] See 47 U.S.C. § 522, which defines "franchise" and "franchising authority":

(9) the term "franchise" means an initial authorization, or renewal thereof (including a renewal of an authorization which has been granted subject to section 546 of this title), issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a cable system;

(10) the term "franchising authority" means any governmental entity empowered by Federal, State, or local law to grant a franchise.

[3] Comcast of California/Colorado/Washington I, Inc., a Washington corporation, provides cable services to persons living in the annexation areas. Comcast of Washington IV, Inc., a Washington corporation, provides cable services to residents of the city of Issaquah. Parsons alleges that these entities and others do

but it never actually reduced those rates. Comcast continues to charge subscribers living in the city of Issaquah's annexation area higher rates and other fees and surcharges for basic cable services than to other subscribers living in the city.[4]

¶3 On April 18, 2008, Parsons, as putative class representatives, filed suit against Comcast in King County Superior Court. Parsons pleaded the following causes of action:

(1) Unjust enrichment

(2) Breach of contract

(3) Breach of franchise

(4) Injunctive and declaratory relief

(5) Violation of the Consumer Protection Act (CPA)[5]

Parsons sought treble damages of up to $10,000 per plaintiff under the CPA.[6]

¶4 Comcast moved for summary dismissal with prejudice under CR 12(b)(6), claiming federal preemption, both express and conflict based, of all plaintiffs' claims. After a hearing, the trial court granted Comcast's motion to dismiss.

¶5 Parsons appeals.

## ANALYSIS

■■ ¶6 We review de novo a summary dismissal under CR 12(b)(6).[7] The Washington Supreme Court has previously specified that "a challenge to the legal sufficiency of

---

business simply as "Comcast" and are not separately identified to their subscribers.

[4] The parties do not dispute that premium cable services are not subject to any regulation at all.

[5] Ch. 19.86 RCW.

[6] *See* ch. 19.86 RCW.

[7] *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998); *see also Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007).

the plaintiff's allegations must be denied unless no state of facts which plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief on the claim."[8] We accept the facts as alleged in Parsons' complaint as true.[9] We will also consider hypothetical facts if they support plaintiffs' claims in evaluating the merits of the motion.[10] "CR 12(b)(6) motions should be granted 'sparingly and with care.' "[11]

¶7 Congress, in enacting the Cable Act, established a comprehensive regulatory scheme governing the cable television industry.[12] The Cable Act " 'provide[s] and delineate[s] within Federal legislation the authority of Federal, state and local governments to regulate cable systems.' "[13]

¶8 In determining whether Parsons' state law claims are preempted, " 'our task is to ascertain Congress'

---

[8] *Halvorson v. Dahl,* 89 Wn.2d 673, 674, 574 P.2d 1190 (1978).

[9] *Kinney,* 159 Wn.2d at 842.

[10] *Tenore,* 136 Wn.2d at 330 (citing *Cutler v. Phillips Petroleum Co.,* 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).

[11] *Tenore,* 136 Wn.2d at 330 (quoting *Hoffer v. State,* 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

[12] 47 U.S.C. § 521 discusses the purpose of the Cable Act as being able to

> (1) establish a national policy concerning cable communications;
> (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;
> (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;
> (4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;
> (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and
> (6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems.

[13] *Cable Television Ass'n of N.Y., Inc. v. Finneran,* 954 F.2d 91, 97 (2d Cir. 1992) (quoting H.R. REP. No. 98-934, at 22 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4659).

intent in enacting the federal statute at issue.' "[14] The normal rules of statutory interpretation apply.[15] Where the statute's meaning is plain on its face, then we must give effect to that plain meaning as an expression of legislative intent.[16] Here, the plain meaning of the Cable Act's language is readily apparent: conduct that amounts to rate regulation of basic cable television services is expressly preempted by federal law, excepting that of local franchise authorities as delineated in the act.[17] Franchising authorities, such as the city of Issaquah, inter alia, may negotiate uniform rates for its residents under 47 U.S.C. § 543.[18]

¶9 Any other form of state or local action amounting to rate regulation is preempted, including any claims for relief that necessarily involve or are tantamount to rate regulation, a term that courts have consistently interpreted broadly.[19] That Congress intended rates be governed only by federal law and by local franchising authorities is explicitly stated in the Cable Act: 47 U.S.C. § 543(a)(1) provides that

> [n]o Federal agency or State may regulate the rates for the provision of cable service except to the extent provided under this section and section 532 of this title. Any franchising authority may regulate the rates for the provision of cable service, or any other communications service provided over a cable system to cable subscribers, but only to the extent provided under this section.

---

[14] *Finneran*, 954 F.2d at 95 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983)).

[15] *McCurry v. Chevy Chase Bank, FSB*, 144 Wn. App. 900, 904, 193 P.3d 155 (2008) (quoting *Farmers Ins. Exch. v. Dietz*, 121 Wn. App. 97, 100, 87 P.3d 769 (2004)).

[16] *Group Health Coop. v. City of Seattle*, 146 Wn. App. 80, 104, 189 P.3d 216 (2008).

[17] *See Finneran*, 954 F.2d at 97; 47 U.S.C. §§ 542(h)(2), (i), 543(a).

[18] In fact, it is a requirement under the Cable Act that rates be uniform throughout a franchise area. 47 U.S.C. § 543(d).

[19] *See, e.g., City of Ellensburg v. King Videocable Co.*, 80 Wn. App. 901, 912 P.2d 506 (1996); *Mallenbaum v. Adelphia Commc'ns Corp.*, 74 F.3d 465 (3d Cir. 1996).

¶10 A local franchising authority, including the city of Issaquah, is charged with adopting and administering regulations consistent with its grant of authority as a franchisee under the Cable Act. To that end, it may hire personnel and promulgate procedures in compliance with the Cable Act's greater regulatory scheme.[20] But, a local franchise's regulatory authority is limited:

> A franchising authority may not impose any requirement under this subchapter that has the purpose or effect of prohibiting, limiting, restricting, or conditioning the provision of a telecommunications service by a cable operator or an affiliate thereof.[21]

In entering into and executing its franchise agreement with Comcast, the city of Issaquah properly exercised its authority to engage in a limited ambit of rate regulation under the Cable Act. There is nothing, however, in either the Cable Act or under Comcast and the city's franchise agreement that provides Parsons with a private right of action to enforce the terms of that agreement.

¶11 Under the Cable Act, the only venue in which an aggrieved person or persons may directly challenge the rates charged to them by a cable service provider is before the FCC.[22] No claim challenging the rates and fees charged by a cable provider may lie in state court. Federal preemption is total in this regard.[23]

¶12 In *McCurry v. Chevy Chase Bank, FSB*, we held that federal regulations preempted plaintiffs' state law claims

---

[20] *See* 47 U.S.C. § 543(a)(3).

[21] 47 U.S.C. § 541(b)(3)(B).

[22] 47 U.S.C. §§ 521-559, 601-611; *Storer Cable Commc'ns v. City of Montgomery, Ala.*, 806 F. Supp. 1518, 1529-30 (M.D. Ala. 1992); *see Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 554, 817 P.2d 1364 (1991); *In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 297, 302-03, 622 P.2d 1185 (1980) (discussing primary jurisdiction of federal courts and deference toward agency decisions where agency has authority to regulate, has exercised this authority, and is in the better position than a court to resolve the issue).

[23] *See, e.g., Time Warner Cable v. Doyle*, 66 F.3d 867, 878 (7th Cir. 1995); 47 U.S.C. § 543(a).

challenging facsimile and notary fees, and affirmed summary dismissal of all claims under CR 12(b)(6).[24] In that case, the regulations of the Office of Thrift Supervision expressly and unambiguously preempted all regulation by state or local authorities of loan related fees, processing and servicing of mortgages, and even those regulations that had only an incidental effect on the lending practices of federal savings associations.[25]

¶13 Alternatively, a local franchising authority may sue in federal district court to enforce the terms of its own franchise agreement against the cable provider, including the negotiated rates charged to individual cable services subscribers like Parsons. But here, the city of Issaquah is not the party seeking to enforce the terms of its own franchise agreement with Comcast. In fact, the city is not even named in the suit. Rather, Parsons is trying to enforce an agreement to which it is not a party, even if the Parsons plaintiffs are potential third party beneficiaries to that agreement. Parsons may not simply sue in the city's stead.

¶14 Even though Parsons' claims are couched exclusively in state law, the gravamen of their complaint is rate regulation, a term that has been interpreted expansively by the FCC and various courts across the country. Parsons contend that they have been charged the wrong rate by Comcast and that they should be charged a different rate: the same rate as Comcast charges those Issaquah residents not living in the recently annexed areas. This is rate regulation. A judgment in Parsons' favor finding that Comcast had charged these individual subscribers the wrong rate bears directly on the regulatory scheme expressly preempted by federal law. However worded, any relief sought by Parsons in their complaint requires the court to engage in prohibited rate regulation. The trial court properly granted summary dismissal under CR 12(b)(6) based on federal preemption.

---

[24] 144 Wn. App. 900, 193 P.3d 155 (2008).

[25] *McCurry*, 144 Wn. App. at 905-06.

¶15 For the above reasons, we affirm.

SCHINDLER, C.J., and LAU, J., concur.