FILED
COURT OF APPEALS
DIVISION II

2014 JUN -3 AM 8: 33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FIRST CITIZENS BANK & TRUST COMPANY, | No. 43451-2-II |
| Respondent/Cross-Appellant | (Consolidated with) 43751-1-II |
| v. | |
| ROBERT RANDALL HARRISON and TIFFANY HARRISON, husband and wife and the marital community comprised thereof, | PUBLISHED OPINION |
| Appellants/Cross-Respondents | |

MAXA, J. – 25 U.S.C. § 410 provides that money accruing from any lease of Indian land the United States holds in trust for a Native American is not liable for the payment of any debt or claim against that Native American. The issue here is whether the statute applies when lease payments from Indian trust land are distributed to a Native American and placed in a private bank account.

Tiffany and Robert Harrison appealed the trial court's summary judgment award to First-Citizens Bank & Trust Company for its breach of contract lawsuit based on the Harrisons' failure to pay on a promissory note. First-Citizens cross-appealed on the trial court's ruling that Native American Tiffany Harrison's personal bank accounts containing proceeds from the lease of her Indian trust land were exempt under 25 U.S.C. § 410 from garnishment to collect First-Citizens' judgment against the Harrisons. After the initial briefs were filed in this court, the Harrisons voluntarily withdrew their appeal.

We address First-Citizens' cross-appeal, holding that (1) First-Citizens is judicially estopped from contesting that the money in the Harrisons' bank accounts derived solely from the

lease of Indian trust land, and (2) the 25 U.S.C. § 410 exemption extends to money accruing from the lease of Indian trust land even after the money is placed in a Native American's personal bank account. Accordingly, we affirm. We also award First-Citizens its reasonable attorney fees and costs incurred in responding to the Harrisons' voluntarily dismissed appeal.

FACTS

First-Citizens filed a breach of contract lawsuit against the Harrisons for failure to pay a promissory note based on a line of credit. The trial court entered an order granting summary judgment in favor of First-Citizens on its claim, and awarded First-Citizens its reasonable attorney fees based on a contractual provision in the promissory note. This order resulted in a $161,831.97 judgment against the Harrisons

First-Citizens sought to satisfy its judgment by garnishing the Harrisons' personal bank accounts at Banner Bank, Fife Commercial Bank, and Key Bank. Tiffany Harrison is an enrolled member of the Puyallup Tribe. The Harrisons claimed that the funds in their Banner Bank and Fife Commercial Bank accounts contained money only from the lease of Indian trust lands, and therefore were exempt from garnishment under 25 U.S.C. § 410. First-Citizens objected to and moved to strike the Harrisons' exemption claims, arguing that the Harrisons did not specifically identify the nature of the funds in the accounts and that 25 U.S.C. § 410 is not applicable to money deposited into a Native American's personal bank account.

During oral argument on First-Citizens' motion to strike the Harrisons' claimed exemptions, First-Citizens assured the trial court that an evidentiary hearing regarding the source of the funds in the Harrisons' bank accounts was unnecessary because it was not disputing that the funds derived directly from Indian trust land. Based on the understanding that the parties'

dispute was purely a legal one, the trial court heard argument on whether funds derived from Indian trust land deposited into a personal account were exempt from garnishment under 25 U.S.C. § 410. The trial court agreed with the Harrisons that the money in the bank accounts was exempt under 25 U.S.C. § 410, and it denied First-Citizens' motion to strike the Harrisons' exemption claims.

The Harrisons appealed the entry of judgment against them in favor of First-Citizens. First-Citizens cross-appealed on the exemption claims. After initial briefing, the Harrisons dismissed their appeal. We address First-Citizens' cross-appeal, and its request for attorney fees incurred in responding to the Harrisons' appeal.

## ANALYSIS

A.    SOURCE OF FUNDS UNDER RCW 6.27.160

First-Citizens argues that the Harrisons' exemption claims must be stricken because they failed to prove the factual basis for the exemption – i.e., that the funds in the bank accounts derived from leases of Indian trust land. However, we hold that First-Citizens cannot dispute the source of the funds because it previously stipulated that they derived from the lease of Indian trust land.

In support of their exemption claims, the Harrisons filed declarations of themselves, a manager of one of their businesses, and their attorney asserting that the funds contained in the bank accounts were from leases of Indian trust land. The Harrisons urged the trial court to schedule an evidentiary hearing to allow them to satisfy their burden of proof under RCW 6.27.160 to prove the claimed exemption, including the source and the amount of the exempt

funds. However, First-Citizens repeatedly assured the trial court that it was not disputing that the funds derived directly from Indian trust land and that an evidentiary hearing was unnecessary.

First-Citizens' argument on appeal – that the Harrisons failed to prove the source of the funds in the accounts was traceable to leases of Indian trust land – is inconsistent with its position in the trial court proceedings. "Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006). Courts consider whether the earlier position was accepted by the court, and whether assertion of the inconsistent position results in an unfair advantage or detriment to the opposing party. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538-39, 160 P.3d 13 (2007).

Here, the trial court clearly relied on First-Citizens' representation that the parties' dispute about the source of the bank account funds was purely a legal one, because the court did not hold an evidentiary hearing and instead proceeded to hear argument on whether funds derived from Indian trust land deposited into a personal account were exempt from garnishment under 25 U.S.C. § 410. And in its oral ruling, the trial court reiterated that there was no dispute between the parties that the funds in the bank accounts were from the lease of Indian trust lands. Further, allowing First-Citizens to maintain this inconsistent position would result in unfair detriment to the Harrisons, who were allegedly willing and able to provide such proof regarding the source of the funds in the accounts but were denied the opportunity to do so based on First-Citizens' representations to the trial court.

Accordingly, we hold that First-Citizens is judicially estopped from challenging the adequacy of the Harrisons' proof that the funds are traceable to leases of Indian trust land.

4

B.     25 U.S.C. § 410 EXEMPTION

Tiffany Harrison received proceeds from the lease of her Indian trust land and placed them into her personal bank account. First-Citizens argues that the exemption in 25 U.S.C. § 410 did not apply once lease proceeds arising from Harrison's trust land were distributed directly to her and she placed them in her personal bank account. We disagree, and hold that 25 U.S.C. § 410 continues to protect any money accruing from the lease of Indian trust land, even after it has been distributed to a Native American and placed in a personal bank account.

1.   Jurisdiction

"When a federal statute is silent on the question of jurisdiction, state and federal courts have concurrent jurisdiction." *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1147 (Alaska 1997) (citing *Charles Dowd Box. Co. v. Courtney*, 368 U.S. 502, 506-08, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962)). Because 25 U.S.C. § 410 does not purport to impose exclusive federal jurisdiction, Washington courts have subject matter jurisdiction to determine whether 25 U.S.C. § 410 bars garnishment of the funds in the Harrisons' bank accounts. *See Vitale*, 942 P.2d at 1147 (holding that Alaska state courts had jurisdiction to determine application of 25 U.S.C. § 410 to proceeds of condemnation action on Indian trust land). Accordingly, the trial court had jurisdiction to resolve this issue.

2.   Statutory Construction

Construction of a statute is a question of law, which we review de novo. *Anthis v. Copland*, 173 Wn.2d 752, 755, 270 P.3d 574 (2012). Our fundamental objective in interpreting a federal statute is to ascertain Congress's intent in enacting it. *Parsons v. Comcast of California/Colorado/Washington I, Inc.*, 150 Wn. App. 721, 726-27, 208 P.3d 1261 (2009). The

traditional rules of statutory interpretation apply. *Parsons*, 150 Wn. App. at 727; *see Western Radio Servs. Co. v. Quest Corp.*, 678 F.3d 970, 984 (9th Cir.), *cert. denied*, 133 S. Ct. 758 (2012). If the statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *Parsons*, 150 Wn. App. at 727. When determining a statute's plain meaning, we look to the language of the statute itself and the context of the statute, including related statutes. *Anthis*, 173 Wn.2d at 756. If the statute is susceptible to more than one reasonable interpretation, then we may resort to statutory construction, legislative history, and relevant case law for assistance in determining legislative intent. *Anthis*, 173 Wn.2d at 756.

Two key statutory construction principles apply directly to 25 U.S.C. § 410. First, "[e]xemption statutes should be liberally construed to give effect to their intent and purpose." *Anthis*, 173 Wn.2d at 756. 25 U.S.C. § 410 clearly is an exemption statute. Second, " 'statutes passed for the benefit of dependent Indian tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' " *Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S. Ct. 2102, 48 L. Ed. 2d 710 (1976). Also, we construe statutes to effect their purpose while avoiding absurd, strained, or unlikely consequences. *Thompson v. Hanson*, 168 Wn.2d 738, 750, 239 P.3d 537 (2010). These principles suggest that if the two interpretations of 25 U.S.C. § 410 are equally reasonable, the interpretation that extends the exemption and that is most favorable to Tiffany Harrison should be adopted.

3. Statutory Language

We first examine the statutory language. 25 U.S.C. § 410 provides:

No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a

6

minor, during his minority, except with the approval and consent of the Secretary of the Interior.

Here, the statute does not expressly state that the exemption applies to lease proceeds that are distributed to a Native American and placed in a personal bank account. However, the statute protects money "accruing" from the lease of Indian trust land. "[A]ccrue" is defined as "to come by way of increase or addition: arise as a growth or result." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 13 (2002) (definition 2, usually used with *to* or *from*). Under this definition, in the context of lease proceeds we interpret "accruing" as synonymous with "paid" or "distributed." Stating that money is accruing from the lease of property is the same as stating that the lessee is making lease payments to the lessor.

Here, as required in the statute (1) the bank accounts First-Citizens attempted to garnish contained "money", (2) that money had "accrued" to Tiffany Harrison, and (3) that money had "accrued" from the lease of Tiffany Harrison's Indian trust lands. As a result, the plain language of 25 U.S.C. § 410 unambiguously provides protection for the money in the Harrisons' bank accounts.

Nevertheless, First-Citizens argues that the language of 25 U.S.C. § 410 must be interpreted in light of the unique procedure for Indian trust land that allows the government to collect lease proceeds accruing from that land. Proceeds from Indian trust land usually are paid to the Department of Interior and held in trust for the individual Native American beneficiary in an Individual Indian Money (IIM) account. FELIX S. COHEN, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, §16.04[3], at 1090 (2012). The owner of an unrestricted IIM account may withdraw the funds at any time. COHEN'S HANDBOOK §16.04[4], at 1091. First-Citizens claims that 25 U.S.C. § 410 protects only money accruing to an IIM account and not to money accruing

7

directly to the Native American. To support its argument, First-Citizens points out that the statute allows the Secretary of Interior to consent to the use of the otherwise exempt proceeds for payment of debt, and contends that this provision indicates that the funds contemplated by 25 U.S.C. § 410 would be held in trust by, and therefore under, the control of the Secretary of the Interior.

However, the language of 25 U.S.C. § 410 does not limit the exemption to money accruing to an IIM account. It broadly refers to *any* money accruing from Indian trust land. Further, there is no legislative history or case law that supports this restrictive interpretation of the broad statutory language. Finally, the reference to the Secretary of the Interior also is consistent with extending the exemption to money distributed to a Native American. The Secretary also could consent to using that money for payment of a debt. Accordingly, we reject First-Citizens' interpretation.[1]

Even if we agreed that First-Citizens' interpretation was reasonable, we would conclude that the Harrisons' interpretation also is reasonable. If a statute is subject to two reasonable interpretations, that statute is ambiguous and it is appropriate to resort to statutory construction principles. *Anthis*, 173 Wn.2d at 756. The law requires that we liberally construe both exemption statutes and statutes enacted for the benefit of Native Americans. As a result, any ambiguity in 25 U.S.C. § 410 must be resolved in favor of Tiffany Harrison.

---

[1] First-Citizens also argues that protecting money from the lease of Indian trust land that is distributed to a Native American would lead to an absurd expansion of the exemption to items purchased with the lease payments. But our holding here applies only to money in the Harrisons' bank accounts, and 25 U.S.C. § 410 clearly applies to money. Whether 25 U.S.C. § 410 would extend protection to items purchased with lease proceeds is not before us, and therefore we do not address this issue.

4. Washington Supreme Court – *Anthis*

First-Citizens argues that our Supreme Court's decision in *Anthis*, 173 Wn.2d at 765, requires a ruling that 25 U.S.C. § 410 does not protect Indian trust land lease proceeds that have been distributed to a Native American. In *Anthis*, 173 Wn.2d at 756-57, the court considered a similar issue regarding RCW 41.26.053(1), the statutory protection from garnishment for pension benefits under the Law Enforcement Officers' and Firefighters' (LEOFF) Retirement System. RCW 41.26.053(1) exempted the right of a person to a retirement allowance and the retirement allowance itself. The court reviewed cases interpreting other state and federal exemptions, and concluded that "[c]ourts in other jurisdictions have generally, but not universally, held that some unambiguous reference to money actually paid to or in the possession of the pensioner is necessary in order to find that pension funds retain their exempt status postdistribution." *Anthis*, 173 Wn.2d at 760. The court held that because RCW 41.26.053(1) did not contain explicit language exempting payments deposited in a personal account, LEOFF pension payments were not exempt from garnishment.[2] *Anthis*, 173 Wn.2d at 765.

The court in *Anthis* noted the general rule that exemption statutes are to be liberally construed. *Anthis*, 173 Wn.2d at 765. But the court stated: "we decline to read into the statute language the legislature has omitted, whether intentionally or inadvertently, unless it is required to make the statute rational or to effectuate the clear intent of the legislature." *Anthis*, 173 Wn.2d at 765.

---

[2] Four justices disagreed. *See Anthis*, 173 Wn.2d at 767, 783 (Stephens, J., dissenting). The dissent argued that cases the court reviewed supported a different rule: "courts have determined that pension funds retain their exempt status postdistribution when the language of the statute shows the exempt status attaches to the benefit itself as opposed to the benefit only while held by the government." *Anthis*, 173 Wn.2d at 774 (Stephens, J., dissenting).

First-Citizens argues that like the statute addressed in *Anthis*, 25 U.S.C. § 410 does not contain explicit language exempting Indian trust land lease payments deposited in a personal account. We disagree. As noted above, the term "accruing" as used in the statute includes the receipt of lease payments. 25 U.S.C. § 410. We hold that 25 U.S.C. § 410's reference to "money accruing" from the lease of Indian trust land constitutes an "unambiguous reference to money actually paid" to the Native American as required in *Anthis*, 173 Wn.2d at 760.[3]

Our conclusion is bolstered by the interpretation of the exemption provision of the Social Security Act, another federal statute containing language that is similar to 25 U.S.C. § 410. 42 U.S.C. § 407(a) exempts "moneys paid or payable" to a beneficiary. Under this language, benefits deposited in a personal bank account retain protection as money paid to the beneficiary. *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415-17, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). Because "money accruing" is synonymous with "money paid," the same interpretation applies to 25 U.S.C. § 410.

5. Conclusion

We conclude that the plain language of 25 U.S.C. § 410 supports a holding that money from the lease of Indian trust land remains protected even after it has been paid to a Native American and placed in a private bank account, as long as the Native American can show that the funds in the account are traceable to the lease. Because the funds in the Harrisons' bank accounts are proceeds of leases on Indian trust land, we hold that the trial court correctly denied First-Citizens' motion to strike the Harrisons' exemption claims.

---

[3] First-Citizens also refers to cases in other jurisdictions discussing 25 U.S.C. § 410. However, none of these cases directly address the issue here. And because our holding is based on the clear statutory language, we need not address them.

C. FIRST-CITIZENS ATTORNEY FEES FOR HARRISONS' APPEAL

The Harrisons appealed from the trial court's order granting summary judgment in favor of First-Citizens based on the promissory note the Harrisons executed. After the Harrisons' initial brief and First-Citizens' response brief on both the appeal and cross-appeal were filed, the Harrisons moved for voluntary withdrawal of review of their appeal. First-Citizens did not oppose dismissal, but moved for reasonable attorney fees and costs for responding to the appeal under the attorney fee provision in the promissory note. The Commissioner entered an order dismissing the Harrisons' appeal but deferring First-Citizens' request for attorney fees.

When a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek reasonable attorney fees incurred on appeal. *See* RAP 18.1; *First-Citizens Bank & Trust Co. v. Reikow*, 177 Wn. App. 787, 799, 313 P.3d 1208 (2013). Here, the promissory note and a related change in terms agreement both contain attorney fee provisions stating that the borrower will be responsible for the lender's attorney fees and expenses related to collecting the debt owed. First-Citizens has a contractual right to recover its attorney fees and costs under the terms of these provisions. And the Harrisons did not oppose or otherwise respond to First-Citizens' request for attorney fees, so we need not address whether the

contractual right is inapplicable here. Accordingly, we hold that First-Citizens is entitled to recover its attorney fees and costs incurred in responding to the Harrisons' appeal.[4]

We affirm.

_MAXA, J._
MAXA, J.

We concur:

_HUNT, P.J._
HUNT, P.J.

_BJORGEN, A.C.J._
BJORGEN, J.

---

[4] First-Citizens also requested appellate attorney fees on its cross-appeal. Because First-Citizens is not the prevailing party on its cross-appeal, we deny its request for the cross-appeal. The Harrisons did not request appellate attorney fees.