KONYNENBELT v FLAGSTAR BANK, FSB

Docket No. 214784. Submitted January 12, 2000, at Grand Rapids. Decided July 25, 2000, at 9:00 A.M. Leave to appeal sought.

Mark Konynenbelt and others who prepaid mortgage loans issued by Flagstar Bank, FSB, formerly known as First Security Savings Bank, brought an action in the Wexford Circuit Court against Flagstar, alleging breach of contract and violation of MCL 565.41; MSA 26.558(1) with respect to Flagstar's practice of charging to a mortgagor who prepays a Flagstar mortgage loan the fee collected by the register of deeds for the filing of a discharge of the mortgage. The plaintiffs' loan agreements provided that "[u]pon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of the Security Instrument without charge to Borrower." MCL 565.41; MSA 26.558(1) provides: "A mortgagee . . . within 90 days after a mortgage has been paid or otherwise satisfied and discharged, shall prepare and file a discharge thereof with the register of deeds . . . and pay the fee for recording the discharge." Flagstar moved for summary disposition, arguing that the court lacked subject-matter jurisdiction because the plaintiffs' state law claims are preempted by the Home Owners' Loan Act (HOLA), 12 USC 1461 et seq., and the Depository Institutions Deregulation and Monetary Control Act (DIDMCA), 12 USC 1735f-7a. The court, Charles D. Corwin, J., denied the motion. The Court of Appeals denied Flagstar leave to appeal. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 459 Mich 866 (1998).

The Court of Appeals held:

The plaintiffs' state law claims are not preempted by the HOLA or the DIDMCA.

1. The plaintiffs' claims are not expressly preempted by 12 CFR 545.2, which codified the preemptive effect of regulation of federal savings and loan associations by the Federal Home Loan Bank Board, now the Office of Thrift Supervision (OTS). 12 CFR 545.2 provides that the exercise of the OTS' regulatory authority is preemptive of any state law purporting to address the subject of the operations of a federal savings and loan association. Because Michigan does not favor preemption by federal law, and because 12 CFR

545.2 does not clearly state that state law requirements such as the one set forth in MCL 565.41; MSA 26.558(1) are preempted, the plaintiffs' claims are not expressly preempted by 12 CFR 545.2.

2. The plaintiffs' claims are not impliedly preempted by the HOLA and the regulations promulgated pursuant to the HOLA. In enacting the HOLA, Congress was primarily concerned with regulating the lending activities of federal savings and loan associations and it did not intend to occupy the entire field of federal savings and loan association regulation. The fee requirement of MCL 565.41; MSA 26.558(1) has only an incidental effect on the lending operations of Flagstar and are not impliedly preempted by the HOLA.

3. The plaintiffs' claims are not preempted by the DIDMCA, which exempts loans secured by first liens on residential realty from state usury laws. Congress' intent in preempting state usury laws was to facilitate the availability of first-mortgage home loans at market rates. The fee required by MCL 565.41; MSA 26.558(1) has nothing to do with the availability of mortgage loans or the interest charged for such loans because it is imposed after a loan is made.

Affirmed.

CONSTITUTIONAL LAW — SUPREMACY CLAUSE — PREEMPTION.

Congressional intent to preempt state law may be expressed or implied; if express, the intent must be clearly stated in the statute's language or impliedly contained in the statute's structure and purpose; in the absence of express preemption, implied preemption may exist in the form of conflict or field preemption; conflict preemption acts to preempt state law to the extent that it is in direct conflict with federal law or with the purposes and objectives of Congress; field preemption acts to preempt state law where federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it (US Const, art VI, cl 2).

*Bowerman, Bowden, Haring & Moothart, P.C.* (by *Jonathan R. Moothart*) and *Twohey Maggini* (by *David Schoolenberg*), for the plaintiffs.

*Honigman Miller Schwartz and Cohn* (by *Ronald S. Longhofer* and *Sandra L. Jasinski*), for the defendant.

Before: MARKEY, P.J., and MURPHY and R. B. BURNS*, JJ.

PER CURIAM. Defendant Flagstar Bank, FSB, (Flagstar), formerly known as First Security Savings Bank, appeals by leave granted from the trial court's order denying its motion for summary disposition to dismiss plaintiffs' consumer protection lawsuit, which has been certified as a class action. In this case, we are asked to decide whether the trial court erred in denying Flagstar's motion for summary disposition for a lack of subject-matter jurisdiction because the Home Owners' Loan Act (HOLA), 12 USC 1461 *et seq.*, and the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), 12 USC 1735f-7a, preempt plaintiffs' claims, which are based on state law. We affirm.

## I. FACTS

This appeal arises out of Flagstar's practice of charging its customers who have prepaid a mortgage a $9 fee to reimburse Flagstar for the $9 fee charged by the register of deeds to record a discharge of a mortgage. Plaintiffs in this case signed residential real estate mortgages in favor of Flagstar to secure loans to purchase real property in Michigan. The mortgage signed by each plaintiff stated, in part, that "[u]pon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower." After signing the mortgages, plaintiffs decided to pre-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

pay their respective mortgages and requested prepayment statements from Flagstar. In each of the respective prepayment statements, Flagstar itemized the costs and fees due for each plaintiff to prepay the mortgage. One of the fees identified on the prepayment statements was a $9 "recording fee," which Flagstar admittedly charges its borrowers to reimburse Flagstar for the $9 fee charged by the register of deeds to record a discharge of a mortgage.

Subsequently, plaintiffs filed this lawsuit against Flagstar, objecting to Flagstar's practice of charging the $9 recording fee. In their complaint, plaintiffs raised several state law claims, alleging primarily that Flagstar had breached its covenant in the mortgages because Flagstar had promised to "file a discharge of this Security Instrument without charge to Borrower," and that Flagstar had violated MCL 565.41; MSA 26.558(1), which provides:

A mortgagee or his personal representative, successor or assign, within 90 days after a mortgage has been paid or otherwise satisfied and discharged, shall prepare and file a discharge thereof with the register of deeds for the county where the mortgaged property is located and pay the fee for recording the discharge.

Plaintiffs assert that by state law and by the terms of the mortgage itself, Flagstar is obligated to incur this recording fee expense and not pass it on to its customers as part of the "net amount due" in a prepayment statement. Overall, Flagstar collected over $269,000 in recording fees.

Subsequently, Flagstar moved for summary disposition pursuant to MCR 2.116(C)(4), arguing that Michigan courts lack subject-matter jurisdiction because

Flagstar is a federal savings bank that is regulated by federal law and the federal law preempts the state law that is the basis of plaintiffs' claims. Specifically, Flagstar argued that the HOLA, 12 USC 1461 *et seq.*, gives plenary and exclusive authority to the Office of Thrift Supervision (OTS) to regulate all aspects of a federal savings bank, including real estate lending operations, and that this broad delegation of authority amounted to a preemption of state law. Flagstar also asserted that the DIDMCA, 12 USC 1735f-7a, preempts any state law that limits charges that may be assessed or taken in connection with federally related mortgage loans, including MCL 565.41; MSA 26.558(1).

The trial court denied Flagstar's motion for summary disposition, stating that plaintiffs' claims were not federally preempted. Following the trial court's ruling, Flagstar sought leave to appeal the order to this Court, which was denied. Flagstar then appealed this Court's denial to our Supreme Court. Our Supreme Court granted Flagstar's application for leave and remanded this case to our Court for review as if on leave granted. 459 Mich 866 (1998).

## II. FEDERAL PREEMPTION

Under the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, federal law preempts state law where Congress so intends. *Fidelity Federal Savings & Loan Ass'n v de la Cuesta*, 458 US 141, 152; 102 S Ct 3014; 73 L Ed 2d 664 (1982); *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997). State courts are deprived of subject-matter jurisdiction where the principles of federal preemption apply. *Ryan, supra.* "However, there is a strong presumption against preemption of state law,

and preemption will be found only where it is the clear and unequivocal intent of Congress." *Martinez v Ford Motor Co*, 224 Mich App 247, 252; 568 NW2d 396 (1997).

Congressional intent to preempt state law may be express or implied. *Fidelity Federal, supra* at 152-153; *Ryan, supra* at 28.

> If express, the intent of Congress to preempt state law must be clearly stated in the statute's language or impliedly contained in the statute's structure and purpose. In the absence of express preemption, implied preemption may exist in the form of conflict or field preemption. Conflict preemption acts to preempt state law to the extent that it is in direct conflict with federal law or with the purposes and objectives of Congress. Field preemption acts to preempt state law where federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it. [*Ryan, supra* at 28 (citations omitted).]

In the present case, Flagstar is a federal savings bank as defined by the HOLA. 12 USC 1462(5) and 1464. Accordingly, Flagstar's business practices, including those concerning residential real estate mortgages are subject to a comprehensive statutory and regulatory scheme enforced by the OTS, an office within the United States Department of Treasury. There is no dispute in this case that both the HOLA and the DIDMCA govern Flagstar. As previously stated, we must now decide whether plaintiffs' state law claims are preempted by the HOLA and the DIDMCA.

### III. PREEMPTION UNDER THE HOLA

Flagstar argues that the trial court erred in denying its motion for summary disposition because plaintiffs'

state law claims are preempted by the HOLA. We disagree. This Court reviews the grant or denial of a motion for summary disposition de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). Further, the existence of subject-matter jurisdiction and a determination of preemption, which involves statutory interpretation, are likewise reviewed de novo. *Thomas v United Parcel Service*, 241 Mich App 171; 614 NW2d 707 (2000); *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 160; 610 NW2d 613 (2000).

The HOLA was enacted by Congress to create a system of federal savings and loan associations. *Fenning v Glenfed, Inc*, 40 Cal App 4th 1285, 1291; 47 Cal Rptr 2d 715 (1996). The Federal Home Loan Bank Board[1] was formed as an independent regulatory agency in 1932 and thereafter was vested with plenary authority to administer the HOLA. *Fidelity Federal, supra* at 144.

> Section 5(a) of the HOLA, 12 USC § 1464(a) . . . , empowers the . . . [Bank] Board, "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations.'" Pursuant to this authorization, the Board has promulgated regulations governing "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." [*Fidelity Federal, supra* at 145, quoting *People v Coast Federal Savings & Loan Ass'n*, 98 F Supp 311, 316 (SD Cal, 1951).]

---

[1] In 1989, Congress amended the HOLA by dissolving the bank board and creating the OTS in its place. *Fenning, supra* at 1291, n 3; see, also, 12 USC 1462a-1464.

In 1983, the bank board promulgated 12 CFR 545.2 to codify the preemptive effect of the bank board's regulations. *Fenning, supra*. 12 CFR 545.2 provides:

> The regulations in this Part 545 are promulgated pursuant to the plenary and exclusive authority of the Office to regulate all aspects of the operations of Federal savings associations, as set forth in section 5(a) of the [Home Owners' Loan] Act. This exercise of the Office's authority is preemptive of any state law *purporting to address the subject of the operations* of a Federal savings association. [12 CFR 545.2 (emphasis added).]

Thus, any state law "purporting to address the subject of the operations" of a federal savings association is preempted. Accordingly, the question with which this Court is faced is whether plaintiffs' claims, which are based on MCL 565.41; MSA 26.558(1) and other state law, in effect, "purport[] to address the subject of the operations" of Flagstar.

### A. EXPRESS PREEMPTION

Flagstar asserts that the HOLA and the regulations promulgated pursuant to the act expressly preempt plaintiffs' claims because the claims purport to govern what fees Flagstar may collect and its contractual relationship with its mortgagors. We disagree. "The scope of an express preemption provision is gleaned, first and foremost, from the language of the federal statute, employing traditional rules of statutory construction." *Grunbeck v Dime Savings Bank of New York, FSB*, 74 F3d 331, 336 (CA 1, 1996). This Court must examine the language of 12 CFR 545.2 and the intent of Congress when it enacted the HOLA.

"The language of HOLA, as well as the history that lies
behind its enactment, demonstrate that there is a strong
federal interest in the uniform treatment of the federally
chartered savings and loans associations. Congress initially
enacted HOLA and its regulatory structure in response to a
crisis in the nation's private home financing system. This
crisis had developed at least in part as a result of the incon-
sistent and ill-advised practices of the various states."
[*Siegel v American Savings & Loan Ass'n*, 210 Cal App 3d
953, 959; 258 Cal Rptr 746, 749 (Cal App, 1989) (citations
omitted), quoting *Eureka Federal Savings & Loan Ass'n v
Kidwell*, 672 F Supp 436, 439 (ND Cal, 1987).]

In considering whether the language of 12 CFR
545.2 preempts state law and common law when
they are used as a basis for a cause of action against
a federal savings association like Flagstar, we are per-
suaded by the analysis stated in *Siegel*. In *Siegel*,
*supra* at 960-961, the California Court of Appeal
determined that a savings and loan association's prac-
tice of collecting reconveyance fees in violation of the
California Civil Code was not expressly preempted by
12 CFR 545.2. The court reasoned:

Neither party has cited any case, nor has our independent
research uncovered any case, discussing the preemptive
effect of 12 Code of Federal Regulations, section 545.2. Pre-
emption of state law by federal regulation is not favored.
We will not find express preemption unless a regulation
clearly so states. It is the burden of the party claiming pre-
emption to prove it.

The Board is capable of saying it means to expressly pre-
empt all state law in an area. In enacting the due-on-sale
regulation, 12 Code of Federal Regulations, section 545.8-
3(f), the Board in a preamble expressed its intent "that the
due-on-sale practices of federal savings and loans be gov-
erned 'exclusively by Federal law.' The Board emphasized
that '[f]ederal associations shall not be bound by or subject

to any conflicting State law which imposes different . . . due-on-sale requirements.' "

Section 545.2 contains no such statement that federal law is preemptive of all state common law claims. Indeed, the fact that such preemption language appears in the due-on-sale regulation suggests that the Board does not believe it has passed a regulation preempting all state laws which affect federally chartered associations. We find no express preemption of plaintiffs' claims. [*Id.* (citations omitted), quoting *Fidelity Federal, supra* at 147.]

Similarly, we find that a law requiring the lender to pay the cost to record the discharge of a mortgage has not been expressly preempted by 12 CFR 545.2. Because Michigan does not favor preemption by federal law, and in the absence of a regulation that clearly states that requirements such as the one set forth in MCL 565.41; MSA 26.558(1) are preempted, we do not find express preemption.

### B. IMPLIED PREEMPTION

Flagstar also argues that language of the HOLA and the regulations promulgated pursuant to the act is unambiguous and demonstrates Congress' intent to occupy the entire field; thus, Flagstar argues, the HOLA implicitly preempts plaintiffs' claims. We disagree. Flagstar relies primarily on *Fidelity Federal, supra,* in arguing that the absence of specific statutory or regulatory reference to state laws regarding discharge or recording fees is of no consequence because the entire field has been preempted and all state regulation is precluded. However, the Court in *Fidelity Federal, supra* at 159, n 14, specifically stated that it was not deciding whether the HOLA or the board's regulations occupied the entire field of federal savings and

loan regulations. Moreover, in *Siegel, supra* at 750, the California Court of Appeal concluded that in *Fidelity Federal* the United States Supreme Court expressly suggested that Congress may not have occupied the entire field of operations of savings associations. We agree with this conclusion. The court in *Siegel* quoted the following language from *Fidelity Federal*:

> As we noted above, a savings and loan's mortgage lending practices are a critical aspect of its "operation," over which the Board unquestionably has jurisdiction. Although the Board's power to promulgate regulations exempting federal savings and loans may not be boundless, in this case we need not explore the outer limits of the Board's discretion. [*Id.*, quoting *Fidelity Federal, supra* at 167.]

Flagstar argues that Congress' assumption of exclusive and plenary authority over all aspects of the operations of federal thrifts, including loans made on the security of residential real estate, is a clear expression of congressional intent to occupy the field. We disagree. Comprehensiveness of federal regulation alone is insufficient to establish implied preemption. *Siegel, supra.*

> To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisdiction. [*Id.*, quoting *Hillsborough Co v Automated Medical Labs*, 471 US 707, 717; 105 S Ct 2371; 85 L Ed 2d 714 (1985).]

Flagstar contends that the HOLA's current regulations confirm that federal law always preempts claims

such as those plaintiffs assert. To support this contention, Flagstar quotes the following language from 12 CFR 560.2:

(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 USC 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. . . . OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

\* \* \*

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

\* \* \*

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related

documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

*    *    *

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 USC 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

As plaintiffs note, these regulations became effective on January 1, 1997, which is after plaintiffs filed their claim in this matter. In any event, these regulations do not support Flagstar's contention. To the contrary, these regulations support the conclusion that Congress has not occupied the entire field. Thus, preemption by implication is inappropriate under these regulations. Apparently, the trial court in the present matter reviewed the language quoted above from 12 CFR 560.2 and found that the state law claims relied on by plaintiffs, including the requirements of MCL 565.41; MSA 26.558(1), only incidentally affected Flagstar's lending operations. The trial court found that the $9 recording fee did not affect

interest rates and was not an up-front cost of the loan. We agree with the trial court's findings. The fee in question is merely incidental and has nothing to do with the lending of money. The fee is charged after lending has occurred. Moreover, subsection c of 12 CFR 560.2 expressly preserves the viability of certain state laws, including those based on contract, commercial, and real property law. Had Congress intended to completely occupy the field, it would not have excepted certain state laws. We conclude that the trial court did not err in denying Flagstar's motion for summary disposition after determining that the HOLA did not preempt plaintiffs' claims.

### IV. PREEMPTION UNDER THE DIDMCA

Flagstar also contends that the DIDMCA, 12 USC 1735f-7a, preempts plaintiffs' claims. We disagree. The DIDMCA preemption provision relied on by Flagstar states in part:

> (1) The provisions of the constitution or laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges, which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
>
> (A) secured by a first lien on residential real property . . . ;
>
> (B) made after March 31, 1980; and
>
> (C) described in section 527(b) of the National Housing Act (12 USC 1735f-5(b)). . . . [12 USC 1735f-7a.]

Flagstar focuses its preemption argument primarily on the phrase "other charges, which may be charged" and argues that the "other charges" preempted by the DIDMCA include fees to record the discharge of a mort-

gage. We disagree. In the present case, the trial court found that the DIDMCA did not preempt plaintiffs' state law claims.

To resolve this issue, we must determine the intent of Congress, which is "the cornerstone of preemption analysis." *Ryan, supra* at 27. The legislative purpose in enacting the DIDMCA focused on "state usury ceilings." *Grunbeck, supra* at 339. Congress "sought to facilitate first-mortgage home loans at market rates, in order to enable an adequate credit supply and strengthen the financial system." *Id.* In preempting state usury laws in the context of first mortgage home loans, Congress wanted to stimulate the purchase of homes by assuring the availability of home loans, albeit at potentially high interest rates. *Mitchell v Trustees of United States Mut Real Estate Investment Trust*, 144 Mich App 302, 316; 375 NW2d 424 (1985).

Clearly, this legislative purpose dealing with interest rates and the availability of home loans is not affected by plaintiffs' state law claims objecting to Flagstar's practice of charging the $9 recording fee. As correctly stated by the trial court, the $9 recording fee was not an "up-front cost" and did not affect the interest rates imposed by Flagstar. The fee has nothing to do with the lending of money and the availability of home loans because the fee is imposed after the loan has already been made. Moreover, Congress also indicated its narrow preemptive intent under the DIDMCA by insulating the first mortgage home loans from state usury limitations only:

> In exempting mortgage loans from state usury limitations, the Committee intends to exempt only those limitations that are included in the annual percentage rate. The Com-

mittee does not intend to exempt limitations on prepayment charges, attorney fees, late charges or similar limitations designed to protect borrowers. [*Grunbeck, supra* at 340, quoting 1980 USCCAN 236, 255.]

Further, we find persuasive the rationale of Judge Julian Abele Cook, Jr., of the federal district court in the Eastern District of Michigan in the case of *Smith v CBS Mortgage,* Docket No. 96-CZ-73266-DT, issued January 14, 1997, a similar case against Flagstar where the plaintiffs claimed that certain fees, including a $9 recording fee, charged in connection with preparing and recording the discharge of a mortgage were in violation of MCL 565.41; MSA 26.558(1). Judge Cook concluded that the fee limitation in MCL 565.41; MSA 26.558(1) was not preempted by the DIDMCA:

Under section 501(a) of DIDMCA, 12 USC 1735f-7a(a)(1), Congress preempted all state law which expressly limited interest, discount points, finance charges and other charges in connection with loans, mortgages, credit sales and advances that have been secured by first liens on real estate.

The legislative history of DIDMCA supports the finding of the Court [that MCL 565.41; MSA 26.558(1) did not fall within the intended scope of federal preemption in Title V of the DIDMCA]. The Senate report, which accompanied the bill, provided in relevant part:

"In exempting mortgage loans from state usury limitations, the Committee intends to exempt only those limitations that are included in the annual percentage rate. The Committee does not intend to exempt limitations on prepayment charges, attorney fees, late charges or similar limitations designed to protect borrowers." S Rep No 96-368, 96th Cong, 2d Sess 19, reprinted in 1980 US Code & Admin News, Vol 2, 236, 255.

Thus, federal preemption under Title V only extends to state limitations which are a component of the annual percentage rate (APR). The fee limitation contained in Mich Comp Laws Ann § 565.41 does not fall within the scope of federal preemption under Title V inasmuch as fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents, are fees or charges that are expressly excluded from "finance charges" which form an essential part of the APR. *See* 12 CFR 226.4(c)(7)(ii). Hence, such fees are not a component of the APR and the fee limitation contained in Mich Comp Laws Ann § 565.41 is not preempted by Title V of DIDMCA.

The trial court did not err in denying Flagstar's motion for summary disposition after it properly concluded that the DIDMCA did not preempt plaintiffs' claims against Flagstar.

We affirm.