*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THERESA BYRNES, a legally incapacitated
individual, by her conservator and guardian, PAUL
BYRNES, M.D.,

        Plaintiffs-Appellees/Cross-
        Appellants,

and

PAUL BYRNES, M.D.,

        Plaintiff,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Intervening-Plaintiff-
        Appellant/Cross-Appellee,

v

Jacob Martinez, M.D., CRG LYNWOOD, LLC
doing business as LYNWOOD MANOR
HEALTHCARE CENTER, VICTORIA
VACCARO, FNP, and PROMEDICA CENTRAL
CORPORATION OF MICHIGAN,

        Defendants.

UNPUBLISHED
December 19, 2019

No. 345061
Lenawee Circuit Court
LC No. 16-005579

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Intervening plaintiff, the Department of Health and Human Services (DHHS), appeals as of right the trial court's order approving final distribution of settlement proceeds. Plaintiffs,

-1-

Theresa Byrnes and Paul Byrnes, have cross-appealed. This Court is asked to decide whether the trial court committed error requiring reversal when it (1) calculated the amount the DHHS could recover from the settlement proceeds under a Medicaid lien; (2) did not require the DHHS to prove the elements of plaintiff's medical malpractice claim before finding that it was entitled to reimbursement; and (3) limited the DHHS's ability to fully participate in the lawsuit. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

On August 16, 2014, plaintiff Theresa Byrnes ("Byrnes") (then age 53) went to the hospital with a severe headache. Scans revealed that she had suffered a subarachnoid hemorrhage (brain bleed) which required surgical intervention. She received rehabilitative care at Lynwood Manor Health Care Center ("Lynwood") where Lynwood's alleged malpractice occurred. In short, her headaches persisted and she was unable to participate in therapy. Eventually, it was discovered that she had suffered another brain bleed which required additional surgery. As a result of her brain bleeds, Byrnes is left-sided hemiplegic and dependent on skilled nursing care for her daily needs.

Byrnes received Medicaid benefits while she was treated at Lynwood. On May 6, 2016, plaintiffs filed a medical malpractice lawsuit against Lynwood. On June 2, 2017, the DHHS filed a motion to intervene in the lawsuit, and the trial court granted the motion, but ordered that the DHHS's intervention be "silent." Specifically, the order provided:

> IT IS ORDERED that the [DHHS] is allowed to intervene as Plaintiff to protect its subrogation right under MCL 400.106(1). Although the intervention will be silent, the [DHHS] can participate in settlement negotiations; exercise any interest it may have with respect to the verdict form; and participate post-verdict. The interests or identity of the [DHHS] shall not be disclosed to the jury. The [DHHS] will not participate at trial, and will make no jury presentation.

The DHHS filed its intervening complaint, and the parties submitted the matter to facilitation in March 2018. At the facilitation, plaintiffs settled their claim with defendants for approximately 1/3 of what they had demanded. The DHHS participated in the facilitation, but was not a party to the settlement agreement.

Plaintiffs and the DHHS each filed a motion requesting that the trial court apportion the settlement proceeds and address how much the DHHS would receive in Medicaid reimbursement. At the hearing on the motions, plaintiffs argued that pursuant to the federal anti-lien statute, 42 USC 1396p(a)(1), the Medicaid claim must be reduced pro rata to 32.45% to reflect the reduced amount that plaintiffs had accepted under the settlement agreement, and that it should be further reduced by 39.73% to reflect the amount paid for plaintiffs' attorney fees and costs. The DHHS argued that the trial court must allocate the settlement proceeds into medical and non-medical expenses, or hold an evidentiary hearing to allocate the proceeds before determining the amount of the Medicaid claim as required by *Neal v Detroit Receiving Hospital*, 319 Mich App 557; 903 NW2d 832 (2017).

The trial court ordered that the DHHS be reimbursed for a portion of the Medicaid claim.

The trial court explained that it applied the formula from *Neal* to reduce the DHHS's claimed Medicaid expenditure proportionate to the amount of the entire settlement, and then reduced that sum by a proportionate amount for attorney fees.

The DHHS appeals by right arguing that the trial court committed error requiring reversal when it calculated this amount, and when it limited the DHHS's intervention. Plaintiffs cross-appealed and argue that the DHHS was not entitled to any reimbursement because it did not first prove the elements of a medical malpractice claim against defendants, and in the alternative, that the trial court erred in its calculations. We consider each of the arguments in turn.

## II. STANDARD OF REVIEW

This case involves issues of statutory interpretation which are reviewed de novo as questions of law. *Neal*, 319 Mich App at 564. "All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). Where the statutory language is clear and unambiguous, the statute must be applied as written. *Id.* A court may not read anything into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *Id.* "A statutory term or phrase cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *Id.* (internal quotation marks and citation omitted). We review a trial court's decision on a motion to intervene for abuse of discretion. *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v Daimlerchrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

## III. CALCULATING MEDICAL EXPENSES

The DHHS argues that the trial court erred when it failed to allocate the settlement proceeds attributable to medical expenses before apportioning them. We agree.

42 USC 1396a(a)(25)(A) requires states to take "all reasonable measures to ascertain the legal liability of third parties (including . . . parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service) to pay for care and services . . . ." 42 USC 1396a(a)(25)(B) requires "that in any case where such a legal liability is found to exist . . . the State . . . will seek reimbursement . . . to the extent of such legal liability[.]" 42 USC 1396a(a)(25)(H) requires "that . . . in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which . . . [it] is considered to have acquired the rights of such individual to payment by any other party for such health care items or services." Under, § 1396k "as a condition of [Medicaid] eligibility . . . , the individual is required . . . (A) to assign [to] the State any rights . . . to payment for medical care from any third party; . . . (B) to cooperate with the State . . . in obtaining [such] payments . . . and . . . (C) . . . in identifying, and providing information to assist the State in pursuing, any third party who may be liable[.]"

"[A]ny amount collected by the State under [such] an assignment . . . shall be retained by the State . . . to reimburse it for [Medicaid] payments made on behalf of" the recipient, and "the

remainder of such amount collected shall be paid" to the recipient. § 1396k(b). 42 USC 1396a(a)(18) requires that states "comply with the provisions of section 1396p . . . with respect to liens," and in turn, § 1396p(a)(1)(A) (the federal anti-lien provision) prevents states from seeking reimbursement of medical expenses from a beneficiary during his lifetime and states that "[n]o lien may be imposed against the property of any individual . . . except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual . . . ."

In an effort to comply with these requirements, Michigan enacted MCL 400.106,[1] which includes the state's rights of subrogation and assignment, and gives the state the first priority against proceeds from settlements or judgments against third parties. Specifically, MCL 400.106(1)(b)(ii) defines a medically indigent individual as a person who has

> subrogated [to the DHHS] any right of recovery that a patient may have for the cost of hospitalization, pharmaceutical services, physician services, nursing services, and other medical services not to exceed the amount of funds expended by [the DHHS] for the care and treatment of the patient. The patient or other person acting in the patient's behalf shall execute and deliver an assignment of claim or other authorizations as necessary to secure the right of recovery to [the DHHS]. . . . If a payment is made, [the DHHS], to enforce its subrogation right, may do either of the following: (a) intervene or join in an action or proceeding brought by the injured, diseased, or disabled individual, the individual's guardian, personal representative, estate, dependents, or survivors, against the third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled individual; (b) institute and prosecute a legal proceeding against a third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled individual, in state or federal court, either alone or in conjunction with the injured, diseased, or disabled individual, the individual's guardian, personal representative, estate, dependents, or survivors. [The DHHS] may institute the proceedings in its own name or in the name of the injured, diseased, or disabled individual, the individual's guardian, personal representative, estate, dependents, or survivors. . . . The injured, diseased, or disabled individual may proceed in his or her own name, collecting the costs without the necessity of joining [the DHHS] as a named party. The injured, diseased, or disabled individual shall notify [the DHHS] of the action or proceeding entered into upon commencement of the action or proceeding. An action taken by [the DHHS] in connection with the right of recovery afforded by this section does not deny the injured, diseased, or

---

[1] MCL 400.106 was amended by 2018 PA 511, effective December 28, 2018. The former version of MCL 400.106, as amended by 2014 PA 452, effective January 2, 2015 was in effect at the time the trial court analyzed this statute. That version is referred to herein.

disabled individual any part of the recovery beyond the costs expended on the individual's behalf by [the DHHS]. The costs of legal action initiated by [the DHHS] shall be paid by [the DHHS]. . . . .

MCL 400.106 goes on to state:

(3) An individual receiving medical assistance under this act or his or her legal counsel shall notify [the DHHS] when filing an action in which [the DHHS] may have a right to recover expenses paid under this act. . . . .

(4) If a legal action in which [the DHHS has] a right to recover expenses paid under this act is filed and settled after November 29, 2004 without notice to [the DHHS], [the DHHS] may file a legal action against the individual or his or her legal counsel, or both, to recover expenses paid under this act. The attorney general shall recover any cost or attorney fees associated with a recovery under this subsection.

(5) [The DHHS] has first priority against the proceeds of the net recovery from the settlement or judgment in an action settled in which notice has been provided under subsection (3). . . . [The DHHS] shall recover the full cost of expenses paid under this act unless [the DHHS] agrees to accept an amount less than the full amount. If the individual would recover less against the proceeds of the net recovery than the expenses paid under this act, [the DHHS] and the individual shall share equally in the proceeds of the net recovery. As used in this subsection, "net recovery" means the total settlement or judgment less the costs and fees incurred by or on behalf of the individual who obtains the settlement or judgment.

There are three relevant cases that have considered these types of Medicaid reimbursement provisions.[2] In *Arkansas Dep't of Health & Human Servs v Ahlborn*, 547 US 268; 126 S Ct 1752; 164 L Ed 2d 459 (2006), a Medicaid recipient settled her lawsuit, but the parties did not allocate separate amounts for medical expenses and other categories. *Id*. at 247. The state of Arkansas was not a party to the settlement and sought to recover the full amount of Medicaid benefits paid. *Id*. The plaintiff brought a declaratory action and argued that Arkansas could only recover the portion of settlement proceeds that accounted for past medical expenses, which the plaintiff and Arkansas stipulated accounted for approximately 16.5% of the settlement. *Id*. The Court held that Arkansas could only recover the portion of proceeds designated as

---

[2] Although the federal cases we consider, *Arkansas Dep't of Health & Human Servs v Ahlborn*, 547 US 268; 126 S Ct 1752; 164 L Ed 2d 459 (2006), and *Wos v EMA*, 568 US 627; 133 S Ct 1391, 1399; 185 L Ed 2d 471 (2013), are not binding on this Court, we find them persuasive, and we note that this Court has previously turned to those cases for guidance in *Neal v Detroit Receiving Hospital*, 319 Mich App 557; 903 NW2d 832 (2017), which is controlling here. MCR 7.215(C)(2); *Hackett v Kress*, 1 Mich App 6; 133 NW2d 221 (1965); *Radtke v Everett*, 442 Mich 368, 381–382; 501 NW2d 155 (1993) (this Court is not bound by federal precedent interpreting Michigan law, but it may turn to federal precedent for guidance).

payment for medical expenses, and the rest constituted "property" subject to the federal anti-lien statute. *Id.* at 280-282. Insofar as the state statute permitted Arkansas to recover out of the other portions of the settlement proceeds, it was preempted by the federal anti-lien statute. *Id.*

In *Wos v EMA*, 568 US 627; 133 S Ct 1391, 1399; 185 L Ed 2d 471 (2013), a North Carolina statute that "requir[ed] that up to one-third of any damages recovered by a beneficiary for a tortious injury be paid to the State to reimburse it for payments it made for medical treatment on account of the injury," was held to violate the federal anti-lien statute. *Id.* at 1395, 1399. When the parties settled the underlying tort action for $2.8 million, the trial court placed 1/3 of it into an escrow account until the state's Medicaid lien could be conclusively determined. *Id.* Medicaid had paid for medical expenses totaling $1.9 million, and the settlement agreement did not allocate the settlement amount to different categories of damages. *Id.* at 1399. The Court held:

> that "[w]hen there has been a judicial finding or approval of an allocation between medical and nonmedical damages—in the form of either a jury verdict, court decree, or stipulation binding on all parties—that is the end of the matter." The *Wos* Court noted that in *Ahlborn* "[a]ll parties (including the State of Arkansas) stipulated that approximately 6 percent of the plaintiff's settlement represented payment for medical costs." However, when such a stipulation or judgment does not exist, and "[w]hen the State and the beneficiary are unable to agree on an allocation," . . . a judicial proceeding is necessary. [*Neal*, 319 Mich App at 575–576 (explaining *Wos*, citations omitted, brackets in *Neal*).]

In *Neal v Detroit Receiving Hospital*, 319 Mich App 557; 903 NW2d 832 (2017), the plaintiff, LaDonna Neal, appealed an order requiring her to pay the full amount of a Medicaid lien after she settled her medical malpractice claim and allocated for medical expenses a much lower amount than the lien amount. The health care provider, Meridian Health Plan of Michigan, a Medicaid plan, argued that it was entitled to recovery of the full lien amount pursuant to MCL 400.106(5), notwithstanding the parties' settlement allocations. Neal argued that MCL 400.106(5) was preempted by the federal anti-lien provision, 42 USC 1396p(a)(1), and therefore Meridian was only entitled to the amount allocated by the settlement agreement for medical expenses. *Neal*, 319 Mich App at 561-563.

The trial court held that Meridian was entitled to the full amount of the Medicaid lien. On appeal, this Court reversed the trial court's decision and held that MCL 400.106(5) is preempted by 42 USC 1396p(a)(1), and that Meridian was precluded from "recovering on its Medicaid lien an amount greater than the portion of the settlement proceeds designated as payment for medical expenses[.]" *Id.* at 564. We also noted that Meridian was not a party to the settlement, and therefore, it was not "bound by the allocation of damages made by the settling parties." *Id.* at 576. The case was "remanded to the trial court for a proper hearing and resolution because (1) there [was] no indication in the record that the trial court reviewed the confidential settlement and found it reasonable, fair, and proper regarding the different categories of plaintiff's claimed damages, (2) [Meridian] was an affected party but did not participate in the settlement negotiations or consent to a reduced recovery on its lien, and (3) [Meridian] and plaintiff were unable to agree on a resolution of the outstanding Medicaid lien." We went on to explain:

[T]o obviate the possibility that the settling parties allocated away [Meridian's] significant interest in recovering its rightful portion of plaintiff's settlement proceeds, an evidentiary hearing must be conducted. At the hearing, the court must determine the amount of the Medicaid lien that may be recovered from plaintiff's settlement proceeds taking into consideration the true value of the case and plaintiff's claimed losses. [Meridian] would only be entitled to recover its entire Medicaid lien . . . if that amount comports with a fair and proper allocation of the settlement proceeds among all of plaintiff's losses—which is possible. But again, [Meridian] may only recover its lien amount from the portion of the tort settlement that represents payment for medical expenses. Therefore, until either the parties reach an agreement or the trial court determines the proper and fair allocation of the settlement, the amount [Meridian] is entitled to recover on its lien remains unresolved. [*Id.* at 577.]

Meridian also was required to pay a pro rata share of costs and attorney fees incurred in pursuing the tort action. *Id.* at 578.

The takeaway from *Neal* is twofold:

1. a Medicaid lien can *only* encumber the portion of settlement proceeds designated as payment for medical care, and anything beyond that is preempted by the federal anti-lien statute; and

2. there are effectively two ways of determining that amount: stipulation (including agreement by the lienholder), or judicial determination (made after an evidentiary hearing on the matter).

*Neal* laid out several ways for the trial court to ensure the lienholder's interests were protected when a plaintiff settles an underlying tort claim. First, "the most efficient way is for the plaintiff to ascertain the precise amount the Medicaid lienholder expects to recover and to negotiate that amount if necessary before settling the underlying tort action." *Neal*, 319 Mich App at 576–77. Second, the parties, including the lienholder, can reach an agreement on the amount of the Medicaid lien. *Id.* at 577. Third, the trial court can determine the "proper and fair allocation of the settlement[.]" *Id.* Where a settlement agreement allocates damages, the trial court should review the agreement and make sure that it is reasonable, fair, and proper regarding the different categories of a plaintiff's claimed damages. *Id.* As stated, to obviate the possibility that the settling parties allocated away the lienholder's significant interest in recovering its rightful portion of a plaintiff's settlement proceeds, the trial court should conduct an evidentiary hearing. *Id.* There, the trial court must make a determination of the amount of the Medicaid lien and apportion that from the plaintiff's settlement proceeds taking into consideration the true value of the case and the plaintiff's claimed losses. *Id.*

Here, rather than hold such a hearing, the trial court heard arguments regarding the application of *Neal* which focused on the law rather than on any evidence. The record contains no indication that the trial court apportioned the settlement proceeds into medical and non-medical categories, or considered what portion of the settlement was attributable to lost wages, attendant care, replacement services, lost earning capacity, or pain and suffering, etc. Instead,

the trial court took the full settlement amount and reduced it inversely by determining the ratio the settlement amount was relative to the amount plaintiffs demand in their lawsuit. The trial court apparently attempted to apply formula not found in MCL 400.106, and that was a departure from *Neal*, in which we rejected such a formulaic approach.[3]

Thus, on remand, the trial court must hold an evidentiary hearing to determine the portion of the settlement amount is attributable to medical expenses, "taking into consideration the true value of the case and plaintiff's claimed losses." *Neal*, 319 Mich App at 577. The DHHS argues that its portion is not subject to a pro rata reduction to reflect the reduced settlement amount compared to claimed damages. However, our instructions in *Neal* made clear that this was one factor for the trial court to consider. *Id.* The DHHS has not offered a persuasive argument for us to depart from our directive in *Neal*.

When calculating "medical expenses" the trial court also should consider what amount, if any, of the settlement can be attributed to future medical costs. Neither *Alhborn* nor *Wos* limit "medical expenses" to past medical costs as a per se rule, and nothing in the relevant statutory language points toward a Congressional intent to exempt plaintiff's future medical expenses from recovery by the DHHS. See §§ 1396a(a)(25) and 1396k. Rather, the mandatory assignment rights under § 1396a(a)(25)(H), requires that the state "must be assigned 'the rights of [the recipient] to payment by any other party *for such health care items or services.*' " *Ahlborn*, 547 US at 281, quoting § 1396a(a)(25)(H) (emphasis in *Ahlborn*). This does not include lost wages, pain and suffering, or inheritance because those damages are distinct from medical costs. Following this reasoning to its natural conclusion, the "medical care" described in these provisions is not limited to past medical care, but includes future medical expenses, which are likewise distinct from a plaintiff's other claimed damages. However, we decline to find that future medical costs are always included in "medical expenses" because, as was the case in *Ahlborn*, the plaintiff did not specifically plead any such damages in her complaint. Thus, it may be that in some cases, future medical costs are not considered in settlement negotiations. However, it is one factor the trial court may consider when calculating medical expenses.

Additionally, the trial court may not reduce the DHHS's share by a pro rata reduction of attorney fees. MCL 400.106(5) provides the statutory framework for plaintiff's attorney to receive compensation. MCL 400.106(5) states:

> The [DHHS] has first priority against the proceeds of the net recovery from the settlement or judgment in an action settled . . . . * * * The [DHHS] shall recover the full cost of expenses paid under this act unless [the DHHS] agrees to accept an amount less than the full amount. If the individual would recover less against the proceeds of the net recovery than the expenses paid under this act, [the DHHS] and the individual shall share equally in the proceeds of the net recovery.

---

[3] *Neal* relied on the United States Supreme Court's holdings in *Alhborn* and *Wos* which likewise rejected a "one-size-fits-all" approach to determining what portion of a plaintiff's settlement proceeds are attributable to medical expenses. *Neal*, 319 Mich App 572-573; *Ahlborn*, 547 US at 281; *Wos*, 586 US at 637-638.

As used in this subsection, "net recovery" means the total settlement or judgment less the costs and fees incurred by or on behalf of the individual who obtains the settlement or judgment.

Thus, attorney fees and costs should be deducted from the settlement amount first— before the DHHS receives its share. Although *Neal* declared that this provision was preempted, it only did so with respect to what types of damages the DHHS could collect. *Neal* did not nullify the portion of MCL 400.106(5) which provides for the payment of attorney fees. *Neal* stated that "to the extent that MCL 400.106(5) operates to permit recovery of the full amount of a Medicaid lien from a tort judgment or settlement regardless of the allocation of damages, it is in direct conflict with, and is preempted by, the federal anti-lien provision, 42 USC 1396p(a)(1)." *Neal*, 319 Mich App at 572. "Conflict preemption acts to preempt state law to the extent that it is in direct conflict with federal law or with the purposes and objectives of Congress." *Konynenbelt v Flagstar Bank*, 242 Mich App 21, 26; 617 NW2d 706, 710 (2000). Because *Neal* does not hold that MCL 400.106(5) is preempted entirely, and because nothing in the relevant federal provisions says anything about attorney fees, the portion of MCL 400.106(5) that intends for attorney fees to be taken out of the settlement amount first is still in effect. The trial court should therefore follow this provision when calculating what portion of the settlement proceeds the DHHS may recover.

## IV. PROVING AN UNDERLYING CLAIM AS A PREREQUISITE FOR REIMBURSEMENT

Plaintiffs argue that the DHHS was required to prove the elements of the underlying medical malpractice claim before it could recover any of its Medicaid reimbursement claim. Plaintiffs assert that 42 USC 1396(a)(25)(B) permits the DHHS to step into a plaintiff's shoes via subrogation in order to collect reimbursement for medical assistance in the event that legal liability is found to exist, and that this necessarily means that plaintiff's burden becomes the DHHS's burden, and the DHHS must prove legal liability. Additionally, 42 USC 1396p(a)(1)(A) states that a lien may only be imposed where benefits were "incorrectly paid on behalf of" the Medicaid recipient, and plaintiffs argue that the DHHS must therefore show that benefits were incorrectly paid by proving the underlying medical malpractice claim before it can recover. We disagree.

Federal law requires the DHHS to (1) pay for certain people's medical care, (2) make reasonable efforts to recoup the medical expense it paid from liable third parties (i.e., tortfeasors and insurers), and (3) not recoup any such payments by imposing a lien on the beneficiary's property. 42 USC 1396a(a)(25)(A)-(B); § 1396k; § 1396a(a)(18); § 1396p(a)(1)(A). Nothing in the plain language of any of the applicable provisions requires the DHHS to first prove the elements of an underlying tort claim. Moreover, in *Ahlborn*, 547 US 268, the United States Supreme Court opined that the forced assignment provisions of §§ 1396a(a)(25) and 1396k(a) were exceptions to the anti-lien provision in § 1396p(a)(1)(A) because they were expressly authorized by Congress. Just like in *Ahlborn*, the settlement proceeds here are subject to a statutory lien, MCL 400.106(5), and just like in *Ahlborn*, the portion of the proceeds that represent medical expenses are an exception to the anti-lien provision. Thus, insofar as that portion of proceeds is concerned, § 1396p(a)(1)(A) is inapplicable and the DHHS is not obligated to first prove liability or that the benefits were otherwise "incorrectly paid." Accordingly, the trial court did not err by permitting the DHHS to recover a portion of its lien

without first proving the elements of the underlying medical malpractice claim.

## V. RIGHT TO INTERVENTION

The DHHS argues that the trial court erred when it limited its right to intervention at trial. We disagree.

MCR 2.209(A)(1) provides that "[o]n timely application a person has a right to intervene in an action" in cases where "a Michigan statute or court rule confers an unconditional right to intervene[.]" MCL 400.106(1)(b)(ii) permits the DHHS to intervene in an action brought by an injured Medicaid recipient, and states:

> If a payment is made, [the DHHS], to enforce its subrogation right, may . . .: (a) intervene or join in an action or proceeding brought by the injured, diseased, or disabled individual, the individual's guardian, personal representative, estate, dependents, or survivors, against the third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled individual;

However, even if the right to intervene is unconditional for purposes of the court rules, it is not an absolute right, and the trial court can place restrictions on it, so long as those restrictions stop short of imposing conditions precedent which run afoul of a statute or court rule. See *Mason v Scarpuzza*, 147 Mich App 180; 383 NW2d 158 (1985)[4] (reversing the trial court's granting of the motion to intervene contingent upon the parties reaching an agreement on payment of the plaintiff's litigation costs where the intervening party had a statutory right to intervene); *In re Credit Acceptance Corp*, 273 Mich App 594, 601; 733 NW2d 65 (2007) ("a court has inherent powers to manage its own affairs so as to achieve the orderly and expeditious disposition of cases").

Plaintiffs argue that the trial court properly limited the DHHS's intervention in this case because to permit the DHHS to participate at trial would run afoul of M Civ JI 3.06 which prohibits introduction of evidence that a party is insured, and the collateral source rule, MCL 600.6303, which permits post-verdict reduction of the judgment attributable to medical expenses paid by a collateral source. However, M Civ JI 3.06 pertains only to insurance, not Medicaid coverage, and Medicaid payments do not fit with the definition of "collateral source" under MCL 600.6303, *Shinholster v Annapolis Hosp*, 255 Mich App 339; 660 NW2d 361 (2003), judgment aff'd in part, rev'd in part on other grounds, 471 Mich 540; 685 NW2d 275 (2004). Even though plaintiffs' arguments are unpersuasive, the trial court limited the DHHS's right to intervene only to the extent that it could not participate at trial, and the DHHS does not explain how this restriction harmed its ability to participate and negotiate in settlement proceedings, or its ability

---

[4] Although published decisions of this Court issued before November 1, 1990, are not precedentially binding, MCR 7.215(J)(1), they may be considered as persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

to participate in any award eventually gained by plaintiffs. Absent this explanation, we cannot conclude that the trial court's decision fell outside the range of principled outcomes.

## VI. CONCLUSION

The trial court committed error requiring reversal when it apportioned the settlement proceeds without first holding an evidentiary hearing and making a determination as to what portion of the settlement amount was attributable to medical expenses. Further, the DHHS was not required to prove the elements of the underlying claim before it was entitled to recovery of its Medicaid lien, and the trial court did not abuse its discretion by limiting the DHHS's right to intervention. Accordingly, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens